**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER BILEK, individually and on behalf of others similarly situated, | ) ) | Case No. 1:19-cv-08389 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| FEDERAL INSURANCE COMPANY, HEALTH INSURANCE INNOVATIONS, INC., and DOES 1-10, | ) ) ) ) | **Jury Trial Demanded** |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

1.      Plaintiff Christopher Bilek brings this action against Defendants Federal Insurance Company and Health Insurance Innovations, Inc., to secure redress for Defendants' practice of causing calls to be made to the cellular telephone numbers of Plaintiff and others using an automatic telephone dialing system and prerecorded voice, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2.      Defendants are liable for these calls, even though they did not initiate them. Each Defendant has been sued multiple times for this precise violation, and each Defendant continues to accept business derived therefrom, thus ratifying the illegal calls. Each Defendant has, expressly or through conduct/omission, authorized others to use their names during telemarketing, thus giving the outward impression that the telemarketers are their agents.

**INTRODUCTION**

3.      Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective.  However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and

money.  As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunications abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes….  Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

4.      As is relevant here, federal law under the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which can be trebled where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3).

5.      Defendants caused automated calls to be made to Plaintiff's cell phone without his consent, and Plaintiff files this class action complaint on behalf of himself and others similarly situated, seeking relief from Defendants' illegal calling practices.

**PARTIES**

6.      Plaintiff Christopher Bilek is a natural person who resides in Cook County, Illinois.

7.      Defendant Federal Insurance Company ("FIC") is an Indiana corporation headquartered at 251 North Illinois Street, Suite 1100, Indianapolis, Indiana 46204. Federal Insurance Company is a member of the Chubb family of companies. *See* Chubb Ltd. SEC Form 10-K, Exhibit 21.1 (https://www.sec.gov/Archives/edgar/data/896159/000089615919000005/cb-

12312018xex211.htm). FIC is an affiliate of Chubb Insurance.

8.     Defendant Health Insurance Innovations, Inc. ("HII") is a Delaware corporation headquartered at 15438 North Florida Avenue, Suite 201, Tampa, Florida 33613.

9.     DOES 1-10 are yet-unidentified persons or entities involved in facilitating the lead generation or calling at issue.

## JURISDICTION AND VENUE

10.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

11.     The Court has personal jurisdiction over Defendants and venue is appropriate in this District under 28 U.S.C. § 1391(a) because Defendants do business in this District, caused the calls that are the subject of this lawsuit to be made to Plaintiff and others in this District, generated sales of insurance products through such calls and lead generation targeted at consumers like Plaintiff in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## FACTS

12.     On or about September 20, 2019, Plaintiff received a call to his cell phone number from (847) 238-3767. This call was made on behalf of Defendants HII and Chubb.

13.     The call played a prerecorded message that solicited health insurance and instructed Plaintiff to "press 1" to be connected with a representative.

14.     After Plaintiff followed the automated prompt on his phone, he was connected to a live agent, who provided Plaintiff with a $171/month quote for health insurance (plus a $99 one-time fee), underwritten by Chubb and facilitated by HII.

15.     As is its standard practice, HII knowingly and actively participated in this telemarketing call, real-time, by pairing the telemarketer with the quote for Chubb insurance through its online portal.

16.     On or about September 26, 2019, Plaintiff received another call to his cell phone, this time from (708) 877-6037.

17.     It is the practice of the telemarketers and lead generators used by HII and FIC to spoof caller ID, and to change caller IDs in disparate calls to a particular consumer, so that recipients cannot tell who is calling them before picking up.

18.     The second call played the same prerecorded message as the September 20, 2019, call, which solicited health insurance and instructed Plaintiff to "press 1" to be connected with a representative.

19.     After Plaintiff followed the automated prompt on his phone, he was again connected to a live agent, who again provided Plaintiff with a quote for Chubb health insurance.

20.     The "Chubb" insurance referenced by the sales agents during the calls to Plaintiff was for Federal Insurance Company. Alternatively, it was for a different member of the "Chubb" family of companies, whose identity will be identified through discovery.

21.     The calls made by or on behalf of Defendants to Plaintiff's cell phone number used an artificial or prerecorded voice, as evidenced by the awkward pacing and intonation that audibly differed from a "live" human voice, as well as the instruction that Plaintiff "press 1."

22.     It difficult for a consumer to tell what phone calls are "regular," legitimate calls, what calls are telemarketing and what calls are outright fraud. Upon information and belief, Plaintiff received other calls from or on behalf of Defendants, too.

23.     Defendants' calls to the cell phones of Plaintiff and others were made using an

- 4 -

automatic telephone dialing system ("autodialer" or "ATDS") under the TCPA. The equipment had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.  In other words, no human being physically dialed each digit of Plaintiff's and the other class members' telephone numbers to call their phones—the calls were made using equipment with the capacity to dial a large number of phone numbers in a short period of time, without human intervention.  The equipment used to call Plaintiff and the other class members sequentially or randomly accessed their stored telephone numbers, and automatically called them.

24.     Defendants did not have permission or consent for the calls to Plaintiff and the class identified below.

25.     Defendants knew they did not have consent to make these calls.

26.     Rather, Defendants' business model is to generate insurance leads derived through autodialed and prerecorded calls to consumers' cellular telephone numbers regardless of consent.

27.     Defendants' lead generators had Defendants' express (or, at the very least, implied) actual authority to place the nonconsensual, automated lead generation calls at issue. FIC contracted with HII to generate business, and HII, in turn, contracted with agents and lead generators to effectuate that marketing. FIC knows that HII leads are generated through illegal telemarketing, but inexplicably keeps accepting business derived through HII calls, anyway.

28.     HII directly participated in the lead generation process, as well, providing real-time quoting information and itself emailing quotes to call recipients during the calls. HII orchestrated the telesales at issue.

29.     Likewise, FIC and HII imbued their lead generators with apparent authority for

the calling at issue. FIC gave HII and its agents and lead generators authority to use its tradename, approved scripts, and provided proprietary pricing and product information for use in the lead generation at issue, and HII likewise provided the scripts to its lead generators, participated on the calls directly by emailing quotes using its own tradename while the call recipient was still on the line, and permitting its lead generators to enter information into its system.

30. Defendants also ratified the calling at issue: They knowingly accepted the benefits of their lead generators' nonconsensual, automated calling—for FIC, the benefits of advertising of its insurance, issuance of quotes, and sales; and for HII, financial payment for the generation of insurance leads.

31. Both Defendants have been sued in the past for the exact same telemarketing scheme, and their executives and legal teams were on actual notice that their practices were resulting in nonconsensual, automated calls to consumers' cell phones like those alleged here. *See, e.g., Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* No. 0:19-cv-60597 (S.D. Fla. filed Mar. 6, 2019). Nonetheless, both FIC and HII have continued to reap the benefits of these illegal calls, choosing profits over individual consumer privacy.

32. Plaintiff and the class have been damaged by Defendants' calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff and the class. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and

(b)(3), on behalf of a class and subclass consisting of:

> All persons in the United States whose cellular telephone number FIC, or some
> third party on its behalf, called using an artificial or prerecorded voice or the same
> or similar dialing system used to call Plaintiff, where prior to such call there
> existed no signed, written agreement with the recipient that included a disclosure
> informing the person signing that: (A) By executing the agreement, such person
> authorizes FIC to deliver or cause to be delivered to the signatory telemarketing
> calls using an automatic telephone dialing system or an artificial or prerecorded
> voice; and (B) the person is not required to sign the agreement (directly or
> indirectly), or agree to enter into such an agreement as a condition of purchasing
> any property, goods, or services.

> Plaintiff alleges a subclass of Illinois consumers who received the
> challenged calls.

34.     Upon information and belief, there were more than 100 persons who received

calls as identified in the foregoing class and subclass definitions in 2019, alone.

35.     Common questions of law or fact exist as to all members of the class, which

predominate over any questions solely affecting any individual member, including Plaintiff.

Such questions common to the class include but are not limited to:

a.  Whether the calls to Plaintiff and the class were made using an "automatic

telephone dialing system" as such term is defined or understood under the

TCPA and applicable FCC regulations and orders;

b.  Whether the calls to Plaintiff and the class were made using an artificial or

prerecorded voice as such terms are defined or understood under the TCPA

and applicable FCC regulations and orders

c.  Whether Defendants had prior express consent for calls to the cell phone

numbers of Plaintiff and the other members of the class; and

      d.   Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other members of the class are entitled to treble damages under 47 U.S.C. § 227(b)(3).

36.    Plaintiff's claims are typical of the claims of the other members of the class and subclass. The factual and legal bases of Defendants' liability to Plaintiff and the other class members are the same: Defendant violated the TCPA and ATDA by causing automated telemarketing calls to be made to the cell number of each class member, without permission.

37.    Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has no interests that might conflict with the interests of the class and subclass. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

38.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of class and subclass members, such that joinder of all members is impracticable.

39.    No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

40.    Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the class and subclass, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the

class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct.

41.     The identity of the class is, on information and belief, readily identifiable from Defendants' or their vendors' records.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227

42.     Plaintiff re-alleges and incorporates all prior allegations.

43.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii).

44.     Defendants initiated or caused to be initiated calls to the cellular telephone numbers of Plaintiff and the other members of the class and subclass defined above using an automatic telephone dialing system, as well as with an artificial or prerecorded voice. These calls were made without regard to whether or not Defendants had previously obtained express permission from the called party to make such calls.  In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the class and subclass when the calls were made.

45.     These calls were willful or knowing.

46.     Defendants violated the TCPA by causing non-emergency calls to be made to the cell phones of Plaintiff and others using an automatic telephone dialing system or an artificial or prerecorded voice, without prior express consent.

47.     To the extent that some of the calls to Plaintiff and the class and subclass were

made by vendors of Defendants, Defendants are liable for those calls, too.

48.    As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the class and subclass were harmed and are each entitled to a minimum of $500 in damages for each violation; treble damages if violations are found to have been willful.  Plaintiff and the class and subclass are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

49.    Because Defendants knew or should have known that Plaintiff and the other members of the class and subclass had not given prior express consent to receive such automated calls to their cell phones—and/or willfully caused automated calls to be made to the cell phones of Plaintiff and the other members of the class and subclass without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the class, pursuant to Section 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff Christopher Bilek, individually and on behalf of the class and subclass, respectfully requests that the Court enter judgment against Defendants for:

A.    Certification of the class and subclass as alleged herein;

B.    A declaration that Defendants violated the TCPA as to Plaintiff and the class and subclass;

C.    Damages, pursuant to 47 U.S.C. § 227(b)(3);

D.    Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at ensuring the prevention of Defendants from violating the TCPA in the future, including:

1.    Requiring Defendants to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendants' and their vendors' outbound calls – including calls originating from lead generators – to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's

counsel on a quarterly basis for no less than five years.

2. Requiring Defendants to include a working, automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls;

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

<u>**COUNT II**</u>
**Violations of the ATDA, 815 ILCS 305/1 *et seq.***

50. Plaintiff re-alleges and incorporates all prior allegations.

51. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

52. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).

53. A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

54. Defendants violated the ATDA by playing prerecorded messages placed by an autodialer during calls to the phones of Plaintiff and the subclass members, without such persons' consent.

55. Defendants' prerecorded messages to the phones of Plaintiff and the other subclass members included language soliciting the sale of goods or services without live voice interaction, including offering insurance or medical discount-related products.

56. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the subclass were harmed and are each entitled to

- 11 -

statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff Christopher Bilek, individually and on behalf of the subclass, respectfully requests that the Court enter judgment against Defendants for:

        A.      Damages, pursuant to 815 ILCS 305/30;

        B.      Attorneys' fees and costs, as permitted by law; and

        C.      Such other or further relief as the Court deems just and proper.

## COUNT III
### Violations of the ATDA, 815 ILCS 305/1 *et seq.*

57.      Plaintiff re-alleges and incorporates all prior allegations.

58.      The ATDA prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15." 815 ILCS 305/30(a).

59.      Section 15 of the ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." 815 ILCS 305/15(d).

60.      Defendants' telemarketing calls above were made with the Caller ID set to deceive consumers into answering calls they would not otherwise answer.

61.      While the service or equipment used to make such calls was capable of allowing the display of a legitimate telephone number, the calls were made instead using disparate caller IDs, designed to trick consumers into answering calls.

62.      As a result of Defendant's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and

attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff Christopher Bilek, individually and on behalf of the subclass, respectfully requests that the Court enter judgment against Defendants for:

A.  Damages, pursuant to 815 ILCS 305/30;

B.  Attorneys' fees and costs, as permitted by law; and

C.  Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: December 21, 2019

CHRISTOPHER BILEK, individually and on behalf of others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

## Document Preservation Demand

Plaintiff demands that Defendant preserve all records, and direct that all vendors, agents and other third parties with relevant documents or data do so too. Plaintiff will assist with reasonable costs of preservation; please contact the attorneys listed here to discuss.

- 13 -