**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER BILEK, individually and on behalf of others similarly situated, | ) ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:19-CV-08389 |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | Honorable Charles P. Kocoras |
| HEALTH INSURANCE INNOVATIONS, | ) | |
| INC., et al., | ) | |
| Defendants. | ) | |

## DEFENDANT FEDERAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Federal Insurance Company ("Federal") moves to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. In support of its motion, Federal states as follows:

## INTRODUCTION

Plaintiff's Complaint asserts three counts. The first alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The second and third counts allege violations of the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1 *et seq*. Plaintiff, a resident of Cook County, Illinois, allegedly received telephone calls to his cell phone number with prerecorded messages soliciting health insurance. (Complaint, ¶¶ 12-13). However, Plaintiff fails to allege the names of the people or entities making the calls, or the type of dialing equipment used. Rather than alleging facts that provide a basis for his claims, Plaintiff merely asserts that "[t]his call was made on behalf of Defendants HII and Chubb." (Complaint at ¶ 12). Furthermore, Plaintiff claims that he obtained a quote for health insurance "underwritten by Chubb and facilitated by HII," again without any support and without any mention of why such allegations should involve Federal. (Complaint at ¶ 14).

1

Federal should be dismissed from this action under Rule 12(b)(6), because the Complaint is devoid of any factual content that would allow for the reasonable inference that Federal is directly or vicariously liable for the alleged telephone calls. Rather, the Complaint is filled with unsupported allegations, some of which fail to differentiate between the separate defendants regarding the challenged conduct. These unsupported allegations are legally defective and the Complaint should be dismissed.[1]

## BACKGROUND FACTS

In the Complaint, Plaintiff alleges the following:[2]

On or about September 20, 2019, Plaintiff received a call to his cell phone number from (847) 238-3767. (Complaint, ¶ 12). The call played a prerecorded message that solicited health insurance and instructed Plaintiff to "press 1" to be connected with a representative. (Complaint, ¶ 13). After Plaintiff followed the automated prompt on his phone, he was connected to a live agent, who provided Plaintiff with a $171/month quote for health insurance (plus a $99 one-time fee), underwritten by Chubb and facilitated by HII. (Complaint, ¶ 14). As is its alleged standard practice, HII knowingly and actively participated in this telemarketing call, in real-time, by pairing the telemarketer with the quote for Chubb insurance through its online portal. (Complaint, ¶ 15).

On or about September 26, 2019, Plaintiff received another call to his cell phone, this time from (708) 877-6037. (Complaint, ¶ 16). The second call played the same prerecorded message that was played in the September 20, 2019 call, which solicited health insurance and instructed Plaintiff to "press 1" to be connected with a representative. (Complaint, ¶ 18). After

---

[1] Federal also incorporates by reference all applicable arguments asserted by HII in support of its motion to dismiss.

[2] Although Federal disagrees with Plaintiff's allegations, for purposes of this motion only, they must be assumed to be true.

Plaintiff followed the automated prompt on his phone, he was again connected to a live agent, who again provided Plaintiff with a quote for Chubb health insurance. (Complaint, ¶ 19). Plaintiff does not allege that the purported agent stated the name of the person or entity placing the call, or on whose behalf the calls were being made.

Plaintiff does not allege that Federal directly made the calls, or that Federal specifically directed the calls to be made. Rather, he asserts that:

> The "Chubb" insurance referenced by the sales agents during the calls to Plaintiff was for Federal Insurance Company. Alternatively, it was for a different member of the "Chubb" family of companies, whose identity will be identified through discovery.

(Complaint, ¶ 20). Thus, Plaintiff does not know whether the sales agent referenced "Federal Insurance Company …. [or] a different member of the Chubb family of companies." (*Id.*).

Plaintiff alleges that "Defendants' lead generators had Defendants' express (or, at the very least, implied) actual authority to place the nonconsensual, automated lead generation calls at issue." (Complaint, ¶ 27). Plaintiff further asserts that "[Federal] contracted with HII to generate business, and HII, in turn, contracted with agents and lead generators to effectuate that marketing." (*Id.*). Plaintiff also alleges, without any factual support, that "[Federal]knows that HII leads are generated through illegal telemarketing, but inexplicably keeps accepting business derived through HII calls, anyway." (*Id.*).

According to Plaintiff, "HII directly participated in the lead generation process … [and] orchestrated the telesales at issue." (Complaint, ¶ 28).

Plaintiff goes on to claim that "[Federal] and HII imbued their lead generators with apparent authority for the calling at issue. [Federal] gave HII and its agents and lead generators authority to use its tradename, approved scripts, and provided proprietary pricing and product information for use in the lead generation at issue, and HII likewise provided the scripts to its

lead generators, participated on the calls directly by emailing quotes using its own tradename while the call recipient was still on the line, and permitting its lead generators to enter information into its system." (Complaint, ¶ 29).

Furthermore, Plaintiff alleges that Defendants ratified the calls at issue by "knowingly accept[ing] the benefits of their lead generators' nonconsensual, automated calling—for [Federal], the benefits of advertising of its insurance, issuance of quotes, and sales; and for HII, financial payment for the generation of insurance leads." (Complaint, ¶ 30).

Plaintiff, however, does not allege that Federal instructed the person who made the calls to do so, or that Federal held the callers out as its agents. Plaintiff also does not allege that he received any communications from Federal suggesting that the callers were Federal's agents. Nor does Plaintiff allege that he purchased any of the insurance products which were offered during the calls.

## ARGUMENT

### I. Plaintiff's Claims Should Be Dismissed Pursuant to Rule 12(b)(6)

#### A. Legal Standard for Dismissal Pursuant to Rule 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's factual allegations fail to state a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-61 (2007). A complaint that contains no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or that fails to allege "more than the mere possibility of misconduct," fails to meet the liberal pleading standard of Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "The complaint must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Frazier v. U.S. Bank Nat. Ass'n,* 2013 WL 1337263, at *2 (N.D. Ill. Mar. 9, 2013) (quotations and citations

omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Martin v. Direct Wines, Inc*., 2015 WL 4148704, at *1 (N.D. Ill. Jul. 9, 2015), *quoting Twombly*, 550 U.S. at 556. "In reviewing the sufficiency of a complaint under the plausibility standard…[courts] need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Martin,* 2015 WL 4148704, at *1 (quotations omitted). Conclusions of fact and law may be disregarded because "they are…not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## B.    Plaintiff Has Not Alleged That Federal is Directly Liable for TCPA Violations

Direct liability under the TCPA applies only to entities that "initiate" the telemarketing calls." *Smith v. State Farm Mut. Auto. Ins. Co*., 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014); *Toney v. Quality Resources, Inc*., 75 F. Supp. 3d 727, 742 (N.D. Ill. 2014). A person or entity initiates a telephone call when it takes the steps necessary to physically place a telephone call. *Smith*, 30 F. Supp. 3d at 771. Here, there are no allegations that Federal took the steps necessary to physically place a telephone call to the Plaintiff.

Plaintiff's apparent theory is that Federal relied on third-parties to allegedly place calls to market its insurance products. (*See* Complaint, ¶¶ 5, 12, 17, 20, 21, 27, 29, and 30). This district has recognized that a seller generally does not "initiate" calls placed by third-party telemarketers so as to be directly liable. *Smith*, 30 F. Supp. 3d at 771 (holding that even if marketing company placed calls on insurance companies' behalf, insurance companies were not directly liable under TCPA). Accordingly, Plaintiff cannot make a claim for direct liability against Federal.

### C.   Plaintiff Has Not Alleged a Plausible Basis for Holding Federal Vicariously Liable for the Calls

The Federal Communications Commission ("FCC") has held that one who does not physically place a phone call may be held vicariously liable under the TCPA for a call made by a third-party under the federal common law of agency and vicarious liability. *See In re Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. R. 6574, ¶¶ 28-36 (F.C.C. 2013); *Smith*, 30 F. Supp. 3d at 772-73. The FCC also held, and this Court has recognized, that an entity may be vicariously liable for TCPA violations under various agency principles "including not only formal agency, but also principles of apparent authority and ratification." *Smith*, 30 F. Supp. 3d at 773, *citing* FCC Ruling, 28 F.C.C. R. at ¶ 28. As this Court has outlined, in order to plead the existence of an agency relationship, a plaintiff must "allege a factual predicate to create the inference of agency." *Frazier v. U.S. Bank Nat'l. Ass'n*., 2013 WL 1337263, at *4 (N.D. Ill. Mar. 29, 2013) (citation omitted).  Federal should be dismissed from this action because Plaintiff fails to allege a factual basis for holding Federal vicariously liable for the alleged calls based on theories of actual authority, apparent authority, or ratification.

### 1.   Plaintiff Does Not Allege Facts to Support a Claim That the "Telemarketers" or "Lead Generators" Who Made the Calls Acted with Federal's Actual Authority

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Smith*, 30 F. Supp. 3d at 775, *quoting* Restatement (Third) Agency § 1.01 (2006). "An agent's authority may be either actual or apparent, and actual authority may be express or implied." *Opp. v. Wheaton Van Lines, Inc*., 231 F.3d 1060, 1064 (7th Cir. 2000), *quoting C.A.M. Affiliates, Inc. v. First American Title Ins. Co.,* 306 Ill. App. 3d 1015, 1021 (Ill. App. Ct. 1999). It is "only the

words or conduct of the alleged principal, not the alleged agent, [that] establish the [actual or apparent] authority of an agent." *Id*. "An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act." *Id*.

Plaintiff has not alleged any facts establishing that the "telemarketers" or "lead generators" were acting at the direction or on behalf of Federal, or that Federal expressly or impliedly granted these callers authority to make calls on its behalf. While Plaintiff alleges that he was provided with a quote for health insurance "underwritten by Chubb and facilitated by HII" (Complaint, ¶ 14), the Complaint lacks any factual allegations showing that these entities acted at the direction of Federal or subject to Federal's control. Notably, Plaintiff never states that Federal was involved in the calls. Plaintiff also does not allege that Federal entered into a contract with the telemarketer or lead generator that would grant them some form of authority to act on its behalf and make phone calls promoting its products. Rather Plaintiff makes general and conclusory assertions without factual support that "Defendants' lead generators had Defendants' express (or, at the very least, implied) actual authority to place the nonconsensual, automated lead generation calls at issue." (Complaint, ¶ 27). Plaintiff further asserts without foundation that "[Federal] contracted with HII to generate business, and HII, in turn, contracted with agents and lead generators to effectuate that marketing." (*Id.*)

Such conclusory assertions without factual backing are insufficient under *Twombly* and *Iqbal*. *See Cunningham v. Kondaur Capital*, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) (court found no vicarious liability for defendant when plaintiff merely asserted, without any proof, that telemarketing calls were made on defendant's behalf by alleged agents of defendant); *see also Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 982-84 (N.D. Ill. 2013) (court found plaintiff's complaint alleging TCPA violations to be "highly suspect" because it

"merely recite[d] naked facts mimicking the elements of a cause of action under the TCPA");

*Smith*, 30 F. Supp. 3d at 777 (no formal agency pleaded where plaintiffs made merely conclusory

allegations without any factual support). Accordingly, Plaintiff fails to allege a plausible claim

that the "telemarketers" or "lead generators" acted with Federal's actual authority when making

the alleged calls.

> **2. Plaintiff Does Not Allege that the "Telemarketers" or "Lead Generators" Acted with Federal's Apparent Authority**

The Complaint also does not contain sufficient allegations to support a claim of vicarious

liability based on apparent authority. The Restatement (Third) of Agency defines "apparent

authority" as "the power held by an agent or other actor to affect a principal's legal relations with

third parties when a third party reasonably believes the actor has authority to act on behalf of the

principal and *that belief is traceable to the principal's manifestations*." Restatement (Third) of

Agency § 2.03 (emphasis added); *see also Smith*, 30 F. Supp. 3d at 777. Apparent authority is

"based on the notion that if a principal creates the appearance that a party is its agent, it will not

be permitted to deny the agency if an innocent third party reasonably relied on the apparent

agency, and is harmed as a result." *Pantoja v. Vill. Of Hoffman Estates*, 2005 WL 372193, at *7

(N.D. Ill. Feb. 15, 2005), *quoting Letsos v. Century 21-New West Realty*, 285 Ill.App.3d 1056,

1065 (Ill. App. Ct. 1996). As such, apparent authority is only created where the principal makes

a "manifestation" to a third party, and the third party has a "reasonable" belief that an actor has

the principal's authority to act. These requirements are not satisfied here.

The Complaint alleges no facts suggesting that Federal made manifestations to the

Plaintiff that would lead him to reasonably believe that it had authorized HII or the

"Telemarketers" or "Lead Generators" to make the unlawful calls. First, Plaintiff never alleges

that he communicated with Federal, much less that Federal suggested to him that any of the

callers or HII were its agent(s). "Statements or manifestations made by the agent are not sufficient to create an apparent agency relationship." *Bridgeview Healthcare Ctr. Ltd. v. Clark*, 2013 WL 4495221, at *3 (N.D. Ill. Aug. 21, 2013) (quotations omitted) (holding that unauthorized act of defendant's agent would not create apparent agency relationship giving rise to TCPA liability); *see also, Opp*., 221 F.3d at 1064 ("Only the words or conduct of the alleged principal, not the alleged agent, establish the [apparent] authority of an agent"). In *Smith*, the court dismissed an apparent agency claim against an insurance company because "Plaintiffs [did] not trace any belief that they may have [had] about an agency relationship…to a manifestation" of the insurance company. 30 F. Supp. 3d at 778; *see also Cunningham*, 2014 WL 8335868, at *7 (dismissing apparent agency claims because "[t]here are no facts alleged that Defendant Kondaur itself took any actions as a principal that would have caused the plaintiff to believe that the [alleged agents] had apparent authority to act on Kondaur's behalf.").

Second, Plaintiff does not assert that he believed that the individuals making the calls were Federal's agents when he received the calls. Apparent authority "is inapplicable when a third party does not reasonably believe that an agent's action has been authorized by the principal." Restatement (Third) of Agency § 7.08 cmt. b; *see also Sphere Drake Ins., Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 6784 (7th Cir. 2004) (insurance broker did not have apparent authority where third party "had the means to determine the extent of [purported agent's] authority").

Third, Plaintiff fails to allege that he was injured as a result of his reliance on any belief that the callers were Federal's agents. Illinois courts have explained that under the doctrine of apparent agency, "a principal can be held vicariously liable in tort for injury caused by the negligent act of his apparent agent if the injury would have not occurred but for the injured

party's justifiable reliance on the apparent agency." *O'Banner v. McDonald's Corp*., 173 Ill. 2d 208, 213 (Ill. 1996). Here, Plaintiff has not alleged that he relied on the callers' apparent authority as agents of Federal. *See Pantoja*, 2005 WL 372193, at *7 (apparent agency requires that "an innocent third party reasonably rel[y] on the apparent agency and [be] harmed as a result"). For these reasons, Plaintiff's allegations do not raise a plausible inference that the alleged "Telemarketers" or "Lead Generators" acted with apparent authority of Federal.

### 3. Plaintiff Does Not Plead a Plausible Factual Basis for Indirect Liability Based on Ratification

Plaintiff's allegations also fail to state a claim under the theory of ratification, because such a theory cannot succeed unless the claimant first establishes the prerequisite of an agency relationship. As detailed above, Plaintiff has not properly alleged that an actual or implied agency relationship existed between Federal and the individuals who made the calls. *See* Restatement (Third) of Agency § 4.03 cmt. b. ("When an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is not a basis [for liability]"); *see also Sahu v. Union Carbide Corp*., 2012 WL 2422757, at *17 (S.D.N.Y. Jun. 26, 2012) *aff'd* 528 F. App'x 96 (2d Cir. 2013) (holding that "ratification does not give rise to the agency relationship itself … it presupposes an agency relationship"); *In re Marriage of Clarke*, 194 Ill. App. 3d 248, 255 (Ill. App. Ct. 1990) ("Ratification requires an act indicating approval of the originally unauthorized act of the agent").

Additionally, even if there is a preexisting relationship between two parties, ratification requires that the principal retain a benefit and have full knowledge of all material facts at the time of ratification. *See* Restatement (Third) of Agency § 4.01 cmt. g.; *Sphere Drake Ltd.*, 376 F. 3d at 677-78 ("Ratification requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction") (internal quotations omitted).

Here, Plaintiff does not allege facts suggesting that Federal received any benefit from the calls at issue. The Complaint does not allege that Plaintiff purchased insurance products from Federal. Courts have rejected similar ratification claims when the plaintiffs fail to allege that they did business with defendant as a result of the calls or otherwise accepted the benefits of the alleged agents' actions. *See Toney*, 75 F. Supp. at 745-46; *Cunningham*, 2014 WL 8335868, at *7-8.

Plaintiff also fails to allege that Federal had "full knowledge" of the facts, much less "specific facts pointing to … knowledge" that would "nudge [their] claim[s] across the line from conceivable to plausible." *Winchester v. Marketti*, 2012 WL 2076375, at *6 (N.D. Ill. Jun. 8, 2012), *citing Twombly*, 550 U.S. at 547. Plaintiff does not allege that Federal had knowledge of all material facts surrounding the alleged calls made by the callers, nor does Plaintiff assert facts stating that Federal knew that the callers or HII were allegedly using an automatic telephone dialing system in violation of the TCPA. In fact, Plaintiff completely misconstrues ratification. If Plaintiff had purchased an insurance contract—which he did not—generated by the calls made by the "lead generators," that might have amounted to ratification of the contract itself by Federal. However, the Complaint is completely devoid of any allegation of manifestation of Federal's intent to sanction or ratify the illegal conduct by the individuals marketing those insurance contracts.

For these reasons, Plaintiff has failed to plead plausible grounds for liability based on ratification.

### D. Plaintiff's Claims for Recovery Pursuant to Illinois' ATDA Must be Dismissed for Failure to Allege Facts Demonstrating a Violation by Federal

Plaintiff alleges he is entitled to recovery under the Automatic Telephone Dialers Act. 815 ILCS 305/1 *et seq.* (the "ATDA"). However, in addition to the agency arguments discussed

above, Plaintiff fails to allege that Federal falls within the jurisdiction of the ATDA. Moreover, Plaintiff's allegations admit that parties other than Federal undertook the actions that allegedly violate the ATDA. Thus, Counts II and III of Plaintiff's Complaint must be dismissed as well.

The jurisdictional statement contained in the ATDA states that "No person shall operate an autodialer in this State except in accordance with this Act." 815 ILCS 305/10. Nowhere in his Complaint does Plaintiff allege that Federal operated an autodialer in Illinois. In fact, the allegations make it clear that parties other than Federal – "telemarketers" or "lead generators" – were the ones who called Plaintiff using an autodialer. (*See* Complaint, ¶¶ 5, 12, 17, 20, 27, 29, and 30). Therefore, it is clear that Federal does not fall within the jurisdiction of the ATDA and cannot be found to have violated the ATDA. Plaintiff's ATDA claims against Federal must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant Federal Insurance Company respectfully requests that this Honorable Court dismiss the claims asserted against it in Plaintiff's Class Action Complaint with prejudice.

Dated: February 13, 2020                    Respectfully submitted,

                                             **FEDERAL INSURANCE COMPANY**

                                             By:__/s/ Arthur McColgan_____
                                                   One of Its Attorneys

Edward P. Gibbons
Arthur J. McColgan
Jeremy D. Kerman
WALKER WILCOX MATOUSEK LLP
Firm I.D. 41812
One North Franklin Street
Suite 3200
Chicago, IL 60606
Tel:  312-244-6700
Fax:  312-244-6800