**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER BILEK, individually and on behalf of others similarly situated, | ) ) ) | Case No. 1:19-cv-08389 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | Hon. Judge Charles P. Kocoras |
| HEALTH INSURANCE INNOVATIONS, | ) | Hon. Mag. Judge Susan E. Cox |
| INC., and DOES 1-10, | ) | |
| Defendants. | ) | |

## PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## <u>**TABLE OF CONTENTS**</u>

**Page**

I.      BACKGROUND ........................................................................................2

      A.    Statutory Background ...................................................................2

      B.    Facts ...........................................................................................2

II.     ARGUMENT ...........................................................................................6

      A.    The Court Has Specific Personal Jurisdiction Over HII. ........................6

      B.    Plaintiff Adequately Pleaded Defendants' Liability. .............................9

          1.    Participation in Telemarketing Process. .....................................9

          2.    Actual Authority. ......................................................................10

          3.    Apparent Authority. ..................................................................14

          4.    Ratification. ..............................................................................17

      C.    Plaintiff Adequately Pleaded an ATDA Claim Against Both Defendants. ...........22

      D.    Nationwide Classes Can Indeed Be Certified. .......................................26

III.    CONCLUSION.......................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alea London Ltd. v. Am. Home Servs., Inc.*,
   638 F.3d 768 (11th Cir. 2011)................................................................. 2

*Aranda v. Caribbean Cruise Line, Inc.*,
   179 F. Supp. 3d 817 (N.D. Ill. 2016) ............................................ 12, 18

*Bakov v. Consol. Travel Holdings Grp., Inc.*,
   2016 WL 4146471 (N.D. Ill. Aug. 4, 2016)....................................... 24

*Chapman v. First Index, Inc.*,
   796 F.3d 783 (7th Cir. 2015)................................................................ 9

*Charvat v. Allstate Corp.*,
   29 F. Supp. 3d 1147 (N.D. Ill. 2014) ............................................ 13, 17

*Clarendon Nat'l Ins. Co. v. Medina*,
   645 F.3d 928 (7th Cir. 2011)............................................................. 14

*Clark v. Allied Interstate LLC*,
   2017 WL 2903358 (N.D. Ga. Jan. 20, 2017) .................................... 26

*Conn. Nat. Bank v. Germain*,
   503 U.S. 249 (1992)........................................................................... 10

*Cunningham v. Foresters Fin. Servs., Inc.*,
   300 F. Supp. 3d 1004 (N.D. Ind. 2018)............................................. 14

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
   2018 WL 7350924 (M.D. Fla. Nov. 15, 2018).................................. 20

*Curry v. Revolution Labs., LLC*,
   949 F.3d 385 (7th Cir. 2020)................................................................ 6

*Dolemba v. Illinois Farmers Ins. Co.*,
   213 F. Supp. 3d 988 (N.D. Ill. 2016) ................................................ 21

*Early v. Bankers Life & Cas. Co.*,
   959 F.2d 75 (7th Cir. 1992).............................................................. 2, 9

*GDG Acquisitions LLC v. Belize*,
   849 F.3d 1299 (11th Cir. 2017)......................................................... 18

*Gould v. Farmers Ins. Exch.*,
    288 F. Supp. 3d 963 (E.D. Mo. 2018)....................................................................... 12, 21

*Henderson v. United Student Aid Funds, Inc.*,
    918 F.3d 1068 (9th Cir. 2019)............................................................................... 18, 21

*Ill. Bell Tel. Co. v. Ill. Commerce Comm'n*,
    362 Ill. App. 3d 652, 840 N.E.2d 704 (Ill. App. Ct. 2005) ........................................ 24

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ..................................................................... 12

*In re Sterling*,
    933 F.3d 828 (7th Cir. 2019)..................................................................................... 11

*Jamison v. First Cred. Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) .................................................................................. 18

*Keim v. ADF MidAtlantic, LLC*,
    199 F. Supp. 3d 1362 (S.D. Fla. 2016)......................................................................... 7

*Keim v. ADF Midatlantic, LLC*,
    2015 WL 11713593 (S.D. Fl. 2015)............................................................................ 19

*Krakauer v. Dish Network, LLC*,
    925 F.3d 643 (4th Cir. 2019).................................................................................... 21

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014) ......................................................................... 13

*Krohe v. City of Bloomington*,
    204 Ill. 2d 392, 789 N.E.2d 1211 (2003) ................................................................. 24

*Lowe v. CVS Pharmacy, Inc.*,
    233 F. Supp. 3d 636 (N.D. Ill. 2017) ......................................................................... 9

*Luna v. Shac, LLC*,
    2014 WL 3421514 (N.D. Cal. July 14, 2014) ............................................................. 7

*Lushe v. Verengo Inc.*,
    2015 WL 500158 (C.D. Cal. Feb. 2, 2015)................................................................ 16

*Mauer v. Am. Intercontinental Univ., Inc.*,
    2016 WL 4651395 (N.D. Ill. Sept. 7, 2016)......................................................... 13, 17

*Mey v. Castle Law Grp.*,
    2019 WL 4579290 (N.D.W. Va. Sept. 20, 2019)........................................................ 7

*Mey v. Venture Data, LLC*,
    2016 WL 11501595 (N.D.W. Va. July 26, 2016) .................................................................. 22

*Mey v. Venture Data, LLC*,
    245 F. Supp. 3d 771 (N.D. W. Va. 2017)........................................................................... 19

*Mims v. Arrow Fin. Servs., LLC*,
    132 S. Ct. 740 (2012) .......................................................................................................... 2

*Moser v. Health Insurance Innovations, Inc.*,
    2018 WL 325112 (S.D. Cal. Jan. 5, 2018) ...................................................................... 20

*Mussat v. IQVIA, Inc.*,
    --- F.3d ----, 2020 WL 1161166 (7th Cir. Mar. 11, 2020)................................................ 26

*NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*,
    736 F.3d 1054 (7th Cir. 2013).......................................................................................... 18

*Opp v. Wheaton Van Lines, Inc.*,
    231 F.3d 1060 (7th Cir. 2000)................................................................................... 10, 14

*Payton v. Kale Realty, LLC*,
    2014 WL 4214917 (N.D. Ill. Aug. 26, 2014) .................................................................... 7

*Purdue Research Found. v. Sanofi–Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003)............................................................................................ 6

*Rasgaitis v. Waterstone Fin. Grp., Inc.*,
    2013 IL App (2d) 111112, 985 N.E.2d 621 (Ill. App. Ct. 2013) ........................................ 25

*rice v. Philip Morris, Inc.*,
    219 Ill. 2d 182, 848 N.E.2d 1 (2005) .............................................................................. 25

*Saccameno v. Ocwen Loan Servicing, LLC*,
    372 F. Supp. 3d 609 (N.D. Ill. 2019) .............................................................................. 22

*Smith v. Royal Bahamas Cruise Line*,
    2016 WL 232425 (N.D. Ill. Jan. 20, 2016) ...................................................................... 7

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010)............................................................................................ 6

*United States v. Dish Network LLC*,
    256 F. Supp. 3d 810 (C.D. Ill. 2017)............................................................................... 25

*United States v. Dish Network, LLC*,
    2020 WL 1471844 (7th Cir. Mar. 26, 2020) ................................................................ 1, 12

*United States v. N. Arapahoe Tribe,*
   2012 WL 12792142 (D. Wyo. Jan. 27, 2012) ........................................................ 19

*Vessal v. Alarm.com,*
   2017 WL 4682736 (N.D. Ill. Oct. 18, 2017) ........................................................ 17

*Warciak v. Subway Restaurants, Inc.,*
   949 F.3d 354 (7th Cir. 2020) .......................................................................... 16

*zsak v. Draftkings, Inc.,*
   191 F. Supp. 3d 900 (N.D. Ill. 2016) ................................................................ 26

## <u>Statutes</u>

215 ILCS 5/500-15 ............................................................................................ 3

215 ILCS 5/500-15(a) ........................................................................................ 8

215 ILCS 5/500-80 ............................................................................................ 3

47 U.S.C. § 227 ................................................................................................ 2

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................ 2, 9

47 U.S.C. § 227(b)(1)(B) .................................................................................. 9

815 ILCS 305/10 .............................................................................................. 23

815 ILCS 305/15(a) .......................................................................................... 23

815 ILCS 305/15(b) .......................................................................................... 23

815 ILCS 305/15(d) ...................................................................................... 2, 23

815 ILCS 305/30 ................................................................................................ 2

815 ILCS 305/30(b) ..................................................................................... 22, 23

815 ILCS 305/30(c) .......................................................................................... 23

815 ILCS 305/30(c-5) ....................................................................................... 23

815 ILCS 305/5(a) ............................................................................................ 24

815 ILCS 505/2Z ............................................................................................. 25

**Other Authorities**

Ill. House Tr. at 46 (May 16, 1991) ................................................................... 24

*In re Joint Pet. Filed by DISH Network, LLC*,
  28 FCC Rcd. 6574 (2013) ...................................................................... passim

*In re Rules & Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (2015) .................................................................................. 9

N. Singer, Sutherland on Statutory Construction (6th ed. 2000) ................................. 24

Restatement (Third) Agency (2006) ..................................................................... passim

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................ 19

**Regulations**

47 C.F.R. § 64.1200(a)(1)(iii) ............................................................................. 9

Defendant Federal Insurance Company ("Chubb") hired Health Insurance Innovations, Inc. ("HII") to market and sell its insurance products through telemarketing. Pursuant to that relationship, HII engaged licensed Chubb insurance agents to make telemarketing calls. When consumers like Plaintiff answer those calls, HII provides those agents with the platform and information necessary to issue quotations for Chubb insurance, and facilitates sales by providing a platform for agents to enter consumer information into its system, and sending call recipients the quote and application materials for completion and submission. Chubb then issues the insurance policy, and Defendants retain the monetary and other benefits of these illegal calls.

The TCPA prohibits prerecorded telemarketing, and imposes vicarious liability on sellers like HII and Chubb, even if they do not "initiate" the calls. *United States v. Dish Network, LLC*, 2020 WL 1471844 (7th Cir. Mar. 26, 2020). Plaintiff received two calls that played prerecorded messages, and during which HII quoted him Chubb insurance.

Both HII and Chubb should be held liable for the calls at issue here. HII should be held liable because it set up and orchestrated the telemarketing scheme, was so involved in the calls that it can be held to have "made" them, and because although it knew about the illegal behavior being committed, it "chose[] to do nothing" and continued to receive the ill-gotten gains. *Dish Network*, at *4.

Chubb should be held liable because it authorized the sale of its products and services and use of its name during these calls, thus creating the reasonable – and true – impression to call recipients like Plaintiff that it authorized the calls. Like HII, Chubb also continued to accept the benefits of these telemarketing calls, even after being placed on notice that they were illegal.

The facts here are well-pled and expose Defendants' motions as a red herring. The

1

Complaint contains detailed factual allegations, far exceeding the requisites of Rule 8 and 9(b).[1]

As stated herein, the motions to dismiss, Dkt. 20 and 23, should be denied.

## I. BACKGROUND

### A. Statutory Background

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). It broadly prohibits making any nonconsensual autodialed or prerecorded call to a cell number. 47 U.S.C. § 227(b)(1)(A)(iii). "[A] seller … may be held vicariously liable under federal common law principles of agency for violations … that are committed by third-party telemarketers[.]" *In re Joint Pet. Filed by DISH Network, LLC*, 28 FCC Rcd. 6574, ¶ 1 (2013) ("*In re DISH*"). "The TCPA is essentially a strict liability statute[;] … [it] does not require any intent for liability except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).

The Illinois equivalent to the TCPA, the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305/1 *et seq.*, provides further consumer relief, as well—prohibiting callers from impeding caller identification, in addition to protecting against unsolicited autodialed telemarketing. 815 ILCS 305/15(d) and 30.

### B    Facts[2]

"Defendants' business model is to generate insurance leads derived through autodialed and prerecorded calls to consumers' cellular telephone numbers regardless of consent." Compl.

---

[1]    Fed. R. Civ. P. 9(b) applies here insofar as it states that allegations of "knowledge, and other conditions of a person's mind may be alleged generally."

[2]    The facts stated here are either specifically laid out in the Complaint or are proffered as additional facts that are consistent with those allegations. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) ("[A] plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment.").

¶¶ 2, 26, 38. Specifically, Chubb "contracted with HII to generate business, and HII, in turn, contracted with agents and lead generators to effectuate that marketing." *Id.* ¶ 27. Pursuant to that agreement, HII functions as the intermediary and facilitator between Chubb, HII's agents/lead generators that placed the illegal calls at issue, and consumer call recipients like Plaintiff to whom the telemarketing is made. *Id.* ¶¶ 14, 26-29. There was a direct relationship between Chubb and the insurance agents that were making these calls, too, because only licensed insurance agents are permitted to sell insurance. *See Id.* ¶ 27 (alleging lead generators had Chubb's "express (or, at the very least, implied) actual authority to place the nonconsensual, automated lead generation calls at issue"); *see also* 215 ILCS 5/500-80 ("An insurer … may not pay a commission, service fee, brokerage, or other valuable consideration to a person for selling, soliciting, or negotiating insurance in [Illinois] if that person is required to be licensed under this Article and is not so licensed at the time of selling, soliciting, or negotiating the insurance.").[3]

HII is intimately involved in the telemarketing lead generation at issue: Not only does it "contract[] with agents and lead generators to effectuate th[e] marketing," Compl. ¶ 27, it "provid[es] real-time quoting information to its lead generators," *Id.* ¶ 28, "provide[s] the scripts to its lead generators, participate[s] on the calls directly by emailing quotes using its own tradename while the call recipient [i]s still on the line, and permit[s] its lead generators to enter information into its system[,]" *Id.* ¶ 29.

Chubb, too, welcomes these calls. It contracted with HII for the lead generation at issue, *Id.* ¶ 27, "gave HII and its agents and lead generators authority to use its tradename, approved scripts, and provided proprietary pricing and product information for use in the lead generation at issue[.]"*Id.* ¶ 29. Chubb "knows that HII leads are generated through illegal telemarketing, but

---

[3]  *See also* 215 ILCS 5/500-15 ("A person may not sell, solicit, or negotiate insurance in [Illinois] for any class or classes of insurance unless the person is licensed for that line of authority in accordance with this Article.").

inexplicably keeps accepting business derived through HII calls, anyway." *Id.* ¶ 27.

HII continues to pursue this illegal activity for Chubb despite recognizing its exposure to TCPA liability before the calls to Plaintiff.[4] Defendants "knowingly accepted the benefits of their lead generators' nonconsensual, automated calling—for [Chubb], the benefits of advertising of its insurance, issuance of quotes, and sales; and for HII, financial payment for the generation of insurance leads." *Id.* ¶ 30. They "have continued to reap the benefits of these illegal calls, choosing profits over individual consumer privacy[,]" *Id.* ¶ 31—astonishing considering that "[b]oth Defendants have been sued in the past for the exact same telemarketing scheme, and their executives and legal teams were on actual notice that their practices were resulting in nonconsensual, automated calls to consumers' cell phones like those alleged here." *Id.* (citing *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, No. 0:19-cv-60597 (S.D. Fla. filed Mar. 6, 2019)).

For his part, Plaintiff Bilek is "a natural person who resides in Cook County, Illinois," Compl. ¶ 6, who received all of the calls at issue to his cell phone within this District. Compl. ¶ 11; Exhibit D, Bilek Decl. ¶ 1. These included a call on September 20, 2019 (made using a District-based 847 area code), and a call on September 26, 2019 (made using a District-based

---

[4]    HII Form 10-K (Mar. 14, 2019) (available at https://www.sec.gov/Archives/edgar/data/1561387/000156138719000004/hiiq-2018x12x31x10k.htm) ("[W]e are subject to various federal and state telemarketing regulations, including the Telephone Consumer Protection Act ('TCPA') and the FCC's implementing regulations, as well as various state telemarketing laws and regulations. **We, our independent third-party distributors, and our insurance carriers have been, and continue to be, the subject of allegations of TCPA violations.** We could be responsible for some of the costs incurred by these independent third-party distributors and/or carriers who are the subject of allegations of TCPA violations. **Any violation of these regulations could expose us to damages for monetary loss, statutory damages, fines, penalties and/or regulatory inquiries.** The Company has received a number of private-party TCPA claims relating to independently owned and operated third-party licensed-agent distributors, alleging that their marketing activities were potentially unlawful. **The Company has been named as a defendant in multiple lawsuits relating to alleged TCPA matters, including claims styled, but not yet certified, as class actions.**") (emphasis added).

708 area code), among possible others.[5] Compl. ¶¶ 12, 16; <u>Exhibit D</u>, Bilek Decl. ¶¶ 2-3.[6] These

calls were autodialed and began with a prerecorded "press 1" message that required Plaintiff to

follow automated prompts in order to speak with a live agent. Compl. ¶¶ 13, 18, 23; <u>Exhibit D</u>,

Bilek Decl. ¶¶ 2-3. Plaintiff was solicited health insurance during both of these calls, and he was

in both instances specifically quoted for "Chubb" insurance. Compl. ¶¶ 14 ("After Plaintiff

followed the automated prompt on his phone, he was connected to a live agent, who provided

Plaintiff with a $171/month quote for health insurance (plus a $99 one-time fee), underwritten by

Chubb and facilitated by HII."), 19 ("After Plaintiff followed the automated prompt on his

phone, he was again connected to a live agent, who again provided Plaintiff with a quote for

Chubb health insurance."); <u>Exhibit D</u>, Bilek Decl. ¶¶ 2-3.[7]

These calls to Plaintiff and the class were facilitated directly through HII, which

"knowingly and actively participated in this telemarketing call, real-time, by pairing the

telemarketer with the quote for Chubb insurance through its online portal." Compl. ¶ 15.

"Defendants did not have permission or consent for the calls to Plaintiff and the class[,]" *Id.* ¶ 24,

defined to include all persons whose cell numbers were similarly called by or on behalf of Chubb

using an artificial or prerecorded voice or the same dialer used to call Plaintiff, where Defendants

lacked a prior written agreement permitting such. *Id.* ¶ 33.[8]

"Plaintiff and the class have been damaged by Defendants' calls. Their privacy was

improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their

phones, and they were forced to divert attention away from other activities to address the calls.

---

[5]     It is the practice of the telemarketers and lead generators used by HII and Chubb to spoof caller ID, and to change caller IDs in disparate calls to a particular consumer, so that recipients cannot tell who is calling them before picking up. Compl. ¶ 17.

[6]     *See* https://nationalnanpa.com/area_code_maps/display.html?il (North American Numbering Plan Administrator confirming that 847 and 708 are northeastern Illinois area codes).

[7]     Federal Insurance Company is a member of the "Chubb" family of companies. Compl. ¶¶ 7, 20.

[8]     Plaintiff also alleges a subclass of Illinois consumers who received the calls. Compl. ¶ 33.

Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff and the class." *Id.* ¶ 32. As detailed herein, Plaintiff has adequately pleaded claims against Defendants, and their motions to dismiss should, therefore, be denied.

## II.   ARGUMENT

### A.   The Court Has Specific Personal Jurisdiction Over HII.[9]

Defendant HII has not submitted evidence supporting its challenge to personal jurisdiction, so the Court takes the allegations in the pleadings as *prima facie* true for purposes of its motion. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

As explained below, the unrefuted allegations in the complaint are *prima facie* evidence that HII purposefully directed its lawsuit-related activities to Illinois, and that Plaintiff's injury arose from those Illinois-related activities. For example:

- HII "caused the calls that are the subject of this lawsuit to be made to Plaintiff and others *in this District*, … [and] generated sales of insurance products through such calls and lead generation targeted at consumers like Plaintiff *in this District*[.]" Compl. ¶ 11 (emphasis added).[10]

- The purpose of the calls that are the subject of this lawsuit was to sell Chubb

---

[9]   Chubb raises no personal jurisdiction challenge in its motion to dismiss, Dkt. 23, and thus waives the argument. *See* Fed. R. Civ. P. 12(h)(1)(A) ("A party waives any defense listed in Rule 12(b)(2)-(5) [including "lack of personal jurisdiction" under Rule 12(b)(2)] by … omitting it from a motion in the circumstances described in Rule 12(g)(2)[,]" i.e., that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

[10]   *See also* Compl. ¶ 11 (further alleging that Defendants do business in this District, and that "a substantial portion of the events giving rise to this cause of action occurred [here]").

insurance through HII to Illinois residents like Plaintiff: Indeed, Chubb explicitly "contracted with HII to generate business, and HII, in turn, contracted with agents and lead generators to effectuate that marketing." Compl. ¶¶ 26-27.

- Pursuant to HII and Chubb's agreement, HII's agent called District area codes—708 and 847—to contact Plaintiff Bilek and other Illinois class members and sell them Chubb insurance products and services. Compl. ¶¶ 12, 16-17, 34.

- "HII knowingly and actively participated in this telemarketing call [to Plaintiff in Illinois], real-time, by pairing the telemarketer with the quote for Chubb insurance through its online portal." Compl. ¶ 15. This necessarily required consideration of what insurance policies were available to the consumer based on their specific geographic area.

- HII knew that it was soliciting, and intended to solicit, into Illinois, including when it quoted Illinois resident Plaintiff Bilek for Chubb insurance during two *separate* illegal calls, and when it emailed quote/application materials to other Illinois subclass members. Compl. ¶¶ 12-19, 28, 33; *also* Exhibit D, Bilek Decl. ¶ 4 (confirming that Plaintiff received Chubb insurance quote only after identifying his District-based ZIP code); Exhibit B, Duffie Dep. at 59 (HII vendor confirming that "HII knew the state in which the consumer that was being quoted lived when it provided the quotes for insurance").

- HII had intent and actual knowledge that it was generating insurance leads to Plaintiff and other Illinois consumers as a result of the telemarketing lead generation at issue. Compl. ¶ 11. In fact, there were more than 100 such Illinois consumers in 2019, alone. Compl. ¶¶ 33-34.

"[I]n the context of the TCPA, … personal jurisdiction is proper in the District where an unlawful communication is received," because that is where the harm of the illegal call was felt. *Mey v. Castle Law Grp.*, 2019 WL 4579290, at *4 (N.D.W. Va. Sept. 20, 2019).[11] In this case, the Northern District of Illinois is the proper jurisdiction because "Christopher Bilek is a natural person who resides in Cook County, Illinois[,]" to whom Defendants "caused the calls that are the subject of this lawsuit to be made … in this District." Compl. ¶¶ 6, 11; Exhibit D, Bilek Decl.

---

[11]     *See also, e.g., Payton v. Kale Realty, LLC*, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) ("[C]ourts have repeatedly held that sending a message into the forum state in violation of the TCPA is sufficient to confer specific personal jurisdiction over the defendant."); *Smith v. Royal Bahamas Cruise Line*, 2016 WL 232425, at *2 (N.D. Ill. Jan. 20, 2016); *Luna v. Shac, LLC*, 2014 WL 3421514, at *3-4 (N.D. Cal. July 14, 2014); *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1370-371 (S.D. Fla. 2016) (specific jurisdiction where TCPA-violating calls made on behalf of defendants by third parties were received in forum).

¶¶ 2-4 (confirming Plaintiff received Chubb quotes during calls to his District-based cell number while in this District, after providing the caller with his District-based ZIP code).

HII purposefully directed its activities at Illinois, and purposefully availed itself of the privilege of conducting business here, by facilitating and knowingly accepting the benefits of telemarketing intentionally targeted at Illinois consumers. HII gave its agents the quote information to provide to call recipients during the calls at issue. Compl. ¶ 15. Such information is by its nature location-dependent, and HII thus **_knew and intended_** that the lead generation would be targeted at Illinois consumers—including Plaintiff as to the two quotes it provided its telemarketer to give him.[12] Compl. ¶¶ 14-15, 19, 29; Exhibit D, Bilek Decl. ¶ 4 (confirming Illinois ZIP code provided in relation to quote).[13] Plaintiff's and the class' injuries – TCPA and (for Illinois call recipients) ATDA violations – thus arise from these forum-related activities of HII and the agents/lead generators with whom it contracted. Compl ¶¶ 11, 33, 54-56, 62.[14]

Exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice because HII's forum-based activities reasonably should have caused it to anticipate being haled into court here: HII facilitated the Illinois telephone solicitations to Plaintiff and other Illinois class members both through its lead generators and the direct participation and use of its platform during the calls, themselves. *See Lowe v. CVS Pharmacy,*

---

[12]    Illinois resident Plaintiff Bilek was directly solicited by HII's telemarketer through multiple calls he received to his District-based cell phone number while in this District. Compl. ¶¶ 6, 12, 14-16. Indeed, HII's agent even used spoofed caller IDs with local "847" and "708" area codes to make it seem like it was coming from this District. Compl. ¶¶ 12, 16.

[13]    *See also* Exhibit A (excerpt of application HII emailed consumer during call for Chubb insurance, confirming call recipient's address); Exhibit B, Duffie Dep. at 19-23 (excerpt of deposition of HII lead generator, confirming HII is provided with call recipient's ZIP code in order to obtain insurance quote).

[14]    HII cannot deny that it wasn't soliciting Plaintiff and other Illinois consumers: In order to legally sell Chubb insurance to Plaintiff in Illinois, its agent had to be licensed here to do so. *See* 215 ILCS 5/500-15(a) ("A person may not sell, solicit, or negotiate insurance in this State for any class or classes of insurance unless the person is licensed for that line of authority in accordance with this Article."). Indeed, HII's website confirms that HII, through an operating subsidiary, is *also* licensed in Illinois. *See* https://www.hiiq.com/legal-notice (identifying HII Illinois license numbers 829612 and 18737145).

*Inc.*, 233 F. Supp. 3d 636, 645 n.9 (N.D. Ill. 2017) (finding personal jurisdiction over TCPA defendants where calls at issue were made as part of campaign that included Illinois). This Court has specific personal jurisdiction over HII, and its motion should be denied.

**B.      Plaintiff Adequately Pleaded Defendants' Liability.**

"A complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy." *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015). "Plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment. He doesn't … have to plead those facts. The federal rules, with the partial exception of Rule 9(b), do not require fact pleading. The plaintiff can plead a conclusion … and then if the conclusion is questioned in a motion or a brief hypothesized facts that if proved would establish it." *Early*, 959 F.2d at 79.

**1.      Participation in Telemarketing Process.**

The TCPA's regulations broadly prohibit the act of "initiating" a nonconsensual telephone call using an autodialer or an artificial or prerecorded voice to a cell phone number. 47 C.F.R. § 64.1200(a)(1)(iii). The "initiation" of a call encompasses either "taking the steps necessary to physically place a telephone call[,]" or "being so involved in the placing of a specific telephone call as to be deemed to have initiated it." *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015).

However, 47 U.S.C. § 227(b)(1)(A)(iii), at issue in the motion, uses the term "make," instead of "initiate." *Compare* 47 U.S.C. § 227(b)(1)(B). It is clear that Congress intended a broader set of characters to have liability with regard to "making" calls than "initiating" them.

*See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous."). While "initiating" happens in an instant, such as pressing a button, "making" something connotes a multi-step process of creation that could involve multiple actors.

Here, the Complaint supports HII's direct liability for "making" the calls because its orchestration of the lead generation caused the violations to occur. Compl. ¶¶ 27-29. Moreover, HII directly participated in the telemarketing calls themselves by "provid[ing] the scripts" for agents to use on the phone, *id.* ¶ 29, "pairing the telemarketer with the quote for Chubb insurance through its online portal" to provide to Plaintiff and other call recipients in "real-time," *id.* ¶ 15, and "emailing quotes to call recipients during the calls[,]" *id.* ¶¶ 28-29.

Thus, while the complaint does not allege that HII "initiated" the calls, its involvement was sufficient to hold it liable for "making" the calls. HII did not passively accept the benefits of the calling; it actively participated and sold goods and services. This direct involvement is sufficient to plausibly plead HII's direct liability, and its motion should thus be denied.

### 2. Actual Authority.

Defendants are liable for the telemarketing at issue because they imbued their telemarketing agent with implied (if not express) actual authority to do so. "[A]ctual authority may be express or implied." *Opp v. Wheaton Van Lines, Inc*., 231 F.3d 1060, 1064 (7th Cir. 2000). Express actual authority is given when a "principal explicitly grants the agent the authority to perform a particular act." *Opp*, 231 F.3d at 1064. "Implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." *Id.* "If an agent's action within the scope of [its] actual authority harms a third party, ... the principal is subject to liability if the same conduct on the part of the principal would have

subjected the principal to tort liability." *In re Sterling*, 933 F.3d 828, 834 (7th Cir. 2019)

(quoting Restatement (Third) Agency § 7.04 *cmt. b* (2006)).

Here, Chubb "contracted with HII to generate business, and HII, in turn, contracted with

agents and lead generators to effectuate that marketing. [Chubb] knows that HII leads are

generated through illegal telemarketing, but inexplicably keeps accepting business derived

through HII calls, anyway." Compl. ¶ 27.[15] Chubb also gave "HII and its agents and lead

generators authority to use its tradename, approved scripts, and provided proprietary pricing and

product information for use in the lead generation at issue." *Id.* ¶ 29. Thus, although Chubb did

not dial the calls at issue, it should be held liable as if it had. Chubb authorized these calls to be

made through a course of dealing that involved repeatedly accepting business derived from the

calls through HII's Chubb-appointed insurance agents, all while knowing that the marketing

originated with illegal telemarketing.

HII, too, authorized these calls by giving the caller authority to make the telemarketing

calls at issue, and "contracted with agents and lead generators to effectuate [the illegal]

marketing" that is the subject of this case. *Id.* ¶ 27. The calls at issue were made for the express

purpose of selling Chubb insurance *through HII*: HII set up the entire telemarketing procedure,

and orchestrated the telesales through its contracted third party including by "pairing the

telemarketer with the quote for Chubb insurance through its online portal" in real-time, *id.* ¶ 15,

"provid[ing] the scripts to its lead generators, participat[ing] on the calls directly by emailing

quotes using its own tradename while the call recipient was still on the line, and permitting its

lead generators to enter information into its system" to that end, *id.* ¶¶ 28-29. *See also* Exhibit A;

---

[15]       "The classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one
person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the
principal's behalf and subject to the principal's control.'" *In re DISH*, 28 FCC Rcd. at 6586 (citing Rest.
3d Agency § 1.01).

Exhibit C (exemplar contract between HII and a lead generator calling for telemarketing).[16] Thus, HII exercised direct control over the lead generation at issue.

This case is similar to *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016). *Aranda* found that actual authority was adequately pleaded where, for example, the consumer alleged that the principal had agreed to the use of subagents and provided the script to be used—thereby demonstrating "control over the manner and means" of the marketing. *Id.* at 832. Chubb here similarly entered into a contract for the telemarketing-based lead generation at issue through HII and its lead generators, Compl. ¶ 27, authorized HII and its lead generator to sell Chubb insurance and bind it into contractual relationships with consumers, Compl. ¶¶ 2, 11, 26-27, 29-30, and provided them with the scripts and proprietary product/policy information it wanted them to use to that end, Compl. ¶ 29.

HII similarly contracted for the telemarketing-based lead generation with its lead generator to generate Chubb leads, including providing the script, providing pricing/quote information, allowing access to its systems to that end, and coordinating with the telemarketer to email quotes to call recipients. Compl. ¶¶ 15, 27-29. This is sufficient to satisfy pleading as to actual authority, either implied or express. *United States v. Dish Network L.L.C.*, 2020 WL 1471844, at *1 (7th Cir. Mar. 26, 2020) (affirming agency relationship finding based upon the right to control, and noting that contractual provisions requiring adherence to the law are insufficient to rebut agency); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012) (denying motion to dismiss where defendant allegedly hired third party to conduct marketing campaign in which text messages were sent in violation of the TCPA); *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 969 (E.D. Mo. 2018) (actual authority plausible in

---

[16]     *E.g.,* HII Form 10-Q (Aug. 6, 2019) ("For the six months end[ing] June 30, 2019, Federal Insurance Company ('CHUBB') accounted for 26% ... of our revenue.") (available at https://www.sec.gov/Archives/edgar/data/1561387/000156138719000010/hiiq_63019x10q.htm).

part because of allegation that defendant directed the content of unlawful advertising and required approval of text messages).

Defendants' suggestion that a plaintiff has to figure out and allege all actors surrounding a call in order to state a claim against the persons who authorized it is incorrect. Plaintiff does not know who initiated these calls. But HII and Chubb, or those they hired, do. Because of the way Defendants set up their telemarketing scheme, consumers have no way of knowing who else is involved; the only entity identified during the call was Chubb (and HII, through its in-call email), and the primary reason Plaintiff knows HII was involved is because of prior experience with HII's back-office workings and substantively identical calls. The suggestion that a plaintiff need allege all actors to state a claim against a seller also contradicts FCC precedent and Rule 8: A consumer cannot reasonably be expected to know the minutiae of multiple tiers of call participants from an unsolicited call, nor is he so required. *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016) ("[A] plaintiff need not allege facts completely within the defendant's knowledge at the pleading stage…. Thus, … it is irrelevant that a plaintiff cannot identify the third-party telemarketer, or what arrangement that third party had with the defendant vendors because the defendants, and not the plaintiff, are reasonably expected to know this[.]").[17]

Because Plaintiff's allegations sufficiently "give rise to an inference of an agency relationship," the motions should be denied. *Cunningham v. Foresters Fin. Servs., Inc.*, 300 F.

---

[17]     *See also In re DISH*, 28 FCC Rcd. at 6588 ("[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy…. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (denying motion to dismiss TCPA case based on multi-tiered agency theory—consumer "need not plead the identity of every player in the alleged scheme nor every nuance of the relationships among the Defendants; indeed, the information necessary to connect all the players is likely in Defendants' sole possession"); *cf. Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014).

Supp. 3d 1004, 1015 (N.D. Ind. 2018) (citing, inter alia, *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 935 (7th Cir. 2011)).

### 3.    Apparent Authority.

Plaintiff also plausibly alleged Defendants' vicarious liability on a theory of apparent authority. "Apparent authority is the power held by an agent or other [non-agent] actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Rest. (3d) of Agency § 2.03; *Opp*, 231 F.3d at 1065 ("Under the doctrine of apparent authority, a principal will be bound not only by the authority that it actually gives to another, but also by the authority that it *appears* to give.") (emphasis added). Apparent authority does <u>not</u> "presuppose the present or prior existence of an agency relationship[;]" rather, apparent authority "applies to actors who appear to be agents but are not, as well as to agents who act beyond the scope of their actual authority." Rest. (3d) of Agency § 2.03, *cmt. a.*

The FCC, which develops the rules and regulations implementing the TCPA, issued guidance identifying situations that would support a finding of apparent authority, including where:

> the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information[;]

> the outside sales entity [is granted the ability] to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark[;] … [and]

> the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

*In re DISH*, 28 FCC Rcd. at 6592 ¶ 46 (also noting that it would also be relevant if, as here, the seller "knew (or reasonably should have known) that the telemarketer was violating the TCPA on

[its behalf but] failed to take effective steps within its power to force the telemarketer to cease that conduct"). All of these apply here.

The Complaint alleges each of these facts in far more detail than what a typical TCPA plaintiff will generally know about the relationship between the seller and its telemarketers.

Specifically, the outward impression for Plaintiff and others – an impression created by Defendants' own actions – was that there was actual authority for the illegal robocalls. Defendants created this impression by: (1) Chubb and HII authorizing the caller to issue quotes for Chubb insurance, (2) Chubb "contract[ing] with HII to generate business, and HII, in turn, contract[ing] with agents and lead generators to effectuate that marketing[,]" Compl. ¶ 27; (3) Chubb giving "HII and its agents and lead generators authority to use its tradename"—as Plaintiff himself experienced, *id.* ¶¶ 14, 19, 29;[18] (4) HII approving telemarketing scripts that HII then "provided … to its lead generators" for use in the calls with Plaintiff and the class, *id.* ¶ 29; (5) Chubb "provid[ing] proprietary pricing and product information for use in the lead generation" telemarketing calls, *id.*; (6) HII using Chubb's proprietary product and pricing information (within its authority granted by Chubb) to "pair[] the telemarketer with the quote for Chubb insurance through its online portal", *id.* ¶¶ 15, 29; (7) HII "participat[ing in] the calls directly by emailing quotes using its own tradename while the call recipient was still on the line" and "providing real-time quoting information" to the telemarketer, *id.* ¶¶ 28-29; (8) HII "permitting its lead generators to enter information into its system", *id.* ¶ 29,[19] and (9) Chubb thereafter following through with sales based upon quotes issued via the telemarketing, *id.* ¶ 30.

---

[18]     In the case of HII, the tradename referenced was HII's MyBenefitsKeeper platform. *E.g.,* Exhibit A; http://tsdr.uspto.gov/documentviewer?caseId=sn87775781&docId=ORC20191229032855 (identifying HII subsidiary as trademark holder).

[19]     *See also* Exhibit B, Duffie Dep. at 20-21 (HII telemarketer testifying that HII's practices requires its third-party lead vendors to log into its online platform, and plug in geographic and other information for the prospective lead, in order for HII to then provide the quote for insurance).

In *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020), the Seventh Circuit recently affirmed dismissal of TCPA claims where the plaintiff's complaint "lack[ed] sufficient facts showing [the purported principal] manifested to the public that [the alleged third-party telemarketer] was its agent." Unlike in *Warciak*—in which the consumer's arguments all rested on alleged acts of the purported agent instead of the principal—Plaintiff's allegations here focus on the Defendants' own actions and omissions.

Moreover, Plaintiff has alleged that he relied upon the apparent authority created by Defendants' actions by answering the call, going through the sales pitch, and receiving quotes for "Chubb" insurance by name. The impression that Plaintiff got—and that any other reasonable consumer would get—from Defendants' actions described above in affirmatively contracting for these calls, authorizing use of their tradenames, reviewing and providing the script, and, in HII's case, directly providing the quote, is that Defendants authorized them. Compl. ¶¶ 14-15, 19, 29.[20]

Further, the course of dealings created by Defendants' actions – i.e., that HII *itself* emails call recipients using its tradename during the calls,[21] and that Chubb *itself* went on to issue written Chubb insurance policies to many class members and retained profits from them as a result of these calls – alone sufficiently alleges Defendants' manifestation of assent to the calling, constituting the kind of "public" acts by a principal and reliance by the call recipient

---

[20]     Chubb's motion suggests that Plaintiff needed to plead that he was injured as a result of relying on its manifestations, *see* Dkt. 23, Chubb Mot. at 9. Plaintiff submits that his and the class' receipt of TCPA violations and, in some cases, completion of the application HII emailed through its platform and payment to Chubb for a Chubb insurance policy, constituted detrimental reliance for purposes of alleging apparent authority, *e.g.,* Compl. ¶¶ 30, 32. That said, the Restatement (Third) of Agency "makes clear that [detrimental] reliance is *not* necessary to establish apparent authority." *Lushe v. Verengo Inc.*, 2015 WL 500158, at *5 (C.D. Cal. Feb. 2, 2015) ("The [TCPA] does not require the recipient of the call … to do anything in response to the prohibited call … to state a claim. Thus, for the Court to require a TCPA plaintiff to show some kind of 'detrimental reliance' for purposes of establishing agency by apparent authority is nonsensical, and would be to insert into the statute an element that is not there.").

[21]     HII's motion **admits** that it "send[s] policy documents via email through its web-portal to the insured and … facilitate(s) the collection of insurance policy premium payments from the new policyholder." Dkt. 20, HII Mot. at 1-2; *see, e.g.,* Exhibit A (HII application emailed to consumer in other TCPA action using its MyBenefitsKeeper tradename).

contemplated in *Warciak*. Compl. ¶¶ 28-30; *see Mauer*, 2016 WL 4651395, at *3 (vicarious liability sufficiently pleaded in TCPA action where person other than named plaintiff allegedly contacted caller and was subsequently contacted by defendants); *Vessal v. Alarm.com*, 2017 WL 4682736, at *3 (N.D. Ill. Oct. 18, 2017) (citing defendant's use of third-party dealers to sell its products to consumers *generally* in denying motion to dismiss TCPA action on agency basis).

Plaintiff's apparent authority allegations also satisfy what other courts in this District have found to be sufficient. For example, *Vessal*, 2017 WL 4682736, at *3, denied a motion to dismiss a TCPA complaint where "[t]he only allegations in the complaint to establish any sort of connection between Alarm.com and the callers are made on information and belief and the assertion that some of the callers identified Alarm.com as their web address[,]" finding that it put defendant "sufficiently on notice of the alleged agency relationship." And *Charvat*, 29 F. Supp. 3d 1147, denied a motion to dismiss where, like here, the plaintiff alleged that he received a quote for a named insurance company during a telemarketing call. *Id.* at 1150. *Charvat* rejected Defendants' argument here that a consumer needed to specifically allege identities and business arrangements between the insurance company and telemarketer as "meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability." *Id.* at 1151. So too, here: Plaintiff cannot be expected to know – and need not allege – all of the players. Because Defendants have reasonable notice of a plausible entitlement for relief, the motions to dismiss should be denied.

### 4.    Ratification.

Plaintiff also adequately pleaded Defendants' ratification of the illegal calling at issue, as an independent basis for liability. "Ratification is the affirmance of a prior act done by another,

whereby the act is given effect as if done by an agent acting with actual authority." Rest. (3d) of Agency § 4.01(1).[22] It does not require a preexisting relationship. *Id.* § 4.01 *cmt. b*.[23]

Ratification occurs in the TCPA context when a party that did not place calls "knowingly accept[s] the benefits that flowed from them," thereby assenting to the actions. *Aranda*, 179 F. Supp. 3d at 833; *Jamison v. First Cred. Servs., Inc.*, 290 F.R.D. 92, 100 (N.D. Ill. 2013) (accepting monetary benefit calls constitutes assent); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (ratification liability attaches where there is "conduct that justifies a reasonable assumption of assent"); *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013) (noting that "[r]atification requires 'that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction[,]'" and holding plaintiff subject to arbitration provision in unexecuted prescription-drug benefit agreement whose better pricing and rates plaintiff retained in lieu of earlier agreement that lacked an arbitration provision).[24]

As an alternative to "knowing retention" of a benefit, a party may manifest assent for prior conduct of a third party through "willful ignorance"—i.e., where the principal does *not* know material facts, but "ratified with awareness that such knowledge was lacking." *Henderson*, 918 F.3d at 1073 (quoting Rest. (3d) Agency § 4.01 at *cmt. b*).

Defendants here ratified the illegal calling: they knew that the telemarketer was acting, and thus purporting to act, with their "actual authority to place the nonconsensual, automated lead generation calls at issue." Compl. ¶ 27. Indeed, HII knew about and directed the illegal

---

[22]     A person ratifies an act by: "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2).

[23]     *See also* Rest. 3d Agency § 4.03 *cmt. a* ("Ratification may create a relationship of agency when none existed before.").

[24]     *GDG Acquisitions LLC v. Belize*, 849 F.3d 1299, 1309 (11th Cir. 2017) ("[A] form of conduct that may yield consent by ratification inheres in the retention of benefits generated by the agent's act.").

telemarketing; it "contracted with agents and lead generators to effectuate [it]."[25] *Id.* Chubb, too,

"knows that HII leads are generated through illegal telemarketing, but inexplicably keeps

accepting business derived through HII calls, anyway." *Id.* Despite knowledge of the illegal

telemarketing, HII and Chubb both authorized the telemarketer to quote Plaintiff and other class

members for "Chubb" insurance as a direct result of Chubb permitting it and HII to use its

tradename[26] and HII went even further to: (1) "pair[] the telemarketer with the quote for Chubb

insurance through its online portal[,]" *id.* ¶¶ 14-15, 19, 29, (2) "email[] quotes using its own

tradename while the call recipient was still on the line, and [(3)] permit[] its lead generators to

enter information into its system," *id.* ¶ 29. Defendants "knowingly accepted the benefits of their

lead generators' nonconsensual, automated calling—for [Chubb], the benefits of advertising of

its insurance, issuance of quotes, and sales; and for HII, financial payment for the generation of

insurance leads." *id.* ¶ 30.[27] The Complaint thus alleges facts sufficient to support Defendants'

ratification for the TCPA violations at issue, through the knowing retention of the benefits of

these illegal calls to Plaintiff and the class.[28]

  And although Fed. R. Civ. P. 9(b) states that allegations of "knowledge, and other

---

[25]   *But see* Rest. (3d) of Agency § 4.01, *cmt. b* ("[T]he principal's consent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification.").

[26]   It is immaterial to ratification whether an actor acted or purported to act as an agent on behalf of an undisclosed or unidentified principal, such as by placing calls without disclosing that the calls were made on behalf of HII as well as Chubb. Rest. 3d Agency § 4.03 *cmt. b*; *see United States v. N. Arapahoe Tribe*, 2012 WL 12792142, at *1 (D. Wyo. Jan. 27, 2012) (contrasting the Second and Third Restatements of Agency, and noting that, "[u]nder the new rule, even an act that appeared to be performed solely on behalf of the actor may be ratified by a hidden principal, if it was indeed performed on behalf of such a principal") (citing Rest. 3d of Agency § 4.03 *cmt. b*).

[27]   *See also* Compl. ¶¶ 25-26 ("Defendants knew they did not have consent to make these calls," and instead implemented a business model intended "to generate insurance leads derived through autodialed and prerecorded calls to consumers' cellular telephone numbers regardless of consent.").

[28]   *See, e.g., Keim v. ADF Midatlantic, LLC*, 2015 WL 11713593, at *8 (S.D. Fl. 2015) (allegations sufficient to state a claim that seller ratified conduct when it accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 788 (N.D. W. Va. 2017) (survey company was liable under the TCPA where it knew that its caller was calling individuals in violation of the TCPA and accepted benefit of calls by using the data generated).

conditions of a person's mind may be alleged generally," the Complaint goes *further* to show

Defendants' knowledge in alleging that "[b]oth Defendants have been sued in the past for the

exact same telemarketing scheme, and their executives and legal teams were on actual notice that

their practices were resulting in nonconsensual, automated calls to consumers' cell phones like

those alleged here." Compl. ¶ 31 (citing *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, No. 0:19-cv-

60597 (S.D. Fla. filed Mar. 6, 2019), similarly seeking to hold Chubb and HII vicariously liable

for TCPA violations of HII's third-party telemarketers).[29] "Each Defendant has been sued

multiple times for this precise violation, and each Defendant continues to accept business derived

therefrom, thus ratifying the illegal calls." Compl. ¶ 2; *see In re DISH*, 28 FCC Rcd. 6574, 6594

¶ 34 n.104 (finding, in context of TCPA, that "a seller may be bound by the unauthorized

conduct of a telemarketer if the seller 'is aware of ongoing conduct ... by [the telemarketer]' and

the seller 'fail[s] to terminate,' or, in some circumstances, 'promot[es] or celebrat[es]' the

telemarketer.") (quoting Rest. (3d) of Agency § 401 *cmt. d*). Indeed, HII's own SEC filings

reflect concern about its exposure as a result of these calls; yet, they continue to reap the benefits

of the illegal calls through issuing quotes for Chubb insurance.[30]

Given the multitude of lawsuits alleging the "exact same telemarketing scheme" by

Defendants, Compl. ¶¶ 29-30, and their acknowledged exposure for TCPA violations by HII's

third-party lead generators, any reasonably diligent seller would investigate further. Defendants

instead chose to continue to reap the benefits of these calls. This alone sufficiently pleads

---

[29]     *See also Moser v. HII*, 2018 WL 325112, at *7 (S.D. Cal. Jan. 5, 2018) (denying motion to
dismiss TCPA class action against HII), *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018
WL 7350924 (M.D. Fla. Nov. 15, 2018) (denying motion to dismiss TCPA action against HII subsidiary);
*Izor v. HII*, No. 8:19-cv-01065 (M.D. Fla. filed May 2, 2019) (TCPA class action against HII and Chubb).
[30]     HII Form 10-K (Mar. 2, 2017) ("We, our distributors, and our carriers have been, and may
continue to be, the subject of allegations of TCPA violations.... Any violation of these regulations could
expose us to damages for monetary loss, statutory damages, fines, penalties and/or regulatory inquiries.")
(www.sec.gov/Archives/edgar/data/1561387/000149315217002078/form10-k.htm).

ratification. *See* Rest. (3d) Agency § 4.01 at *cmt. b*; *Henderson*, 918 F.3d at 1075 (ratification possible where defendant remained silent and continued to accept benefits of collectors' tortious conduct despite knowing facts that would have led a reasonable person to investigate further); *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 662–63 (4th Cir. 2019) ("[R]epeated expressions of ignorance as to a widespread problem can evince more than simply negligence; they can also be a sign that the violations are known, tolerated, and even encouraged.").

Defendants are also wrong that ratification only exists if Plaintiff personally paid them. Ratification is not limited to only the retention of *monetary* benefits: What matters is whether the principal "manifest[ed] … assent or [engaged in] other conduct indicative of consent" to the calling. Rest. (3d) of Agency § 4.01 *cmt. b*.[31] Accepting the benefit of the marketing and refusing to shut it down is sufficient. For example, in *Dolemba v. Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988, 997 (N.D. Ill. 2016), Judge Durkin denied a motion to dismiss a TCPA class action where a Farmers insurance agent allegedly made prerecorded calls inviting recipients to participate in a "town hall" about the opportunity to become an insurance agent. Though the plaintiff did not attend the event, the court found the allegation that Farmers "accepted the benefits of [the third party's] recruitment efforts" to be "more than sufficient" to entitle him to pass the pleading stage. Likewise, in *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 970 (E.D. Mo. 2018), the court denied a motion to dismiss where, inter alia, the TCPA class action defendant allegedly retained the benefit, without plaintiff herself allegedly paying any money, of being able to "decline or accept applications of insurance that were obtained through text message advertising and accepted premiums from sales generated from text message advertising."

---

[31] Indeed, "the principal's assent need not [even] be communicated to the agent or to third parties whose legal relations will be affected by the ratification." Rest. (3d) of Agency § 4.01 *cmt. b*.

Defendants here similarly manifested assent to the calling at issue: HII retained payment from Chubb for its telemarketing lead generation services for the calls to Plaintiff and the class, and Chubb benefitted by having its business advertised to Plaintiff and others, enjoying the ability to accept or deny applications for insurance, and, in many cases, retaining profit through resulting sales. Compl. ¶ 30; *Mey v. Venture Data, LLC*, 2016 WL 11501595, at *5 (N.D.W. Va. July 26, 2016) (declining to dismiss TCPA action, noting that, at the pleading stage, plaintiff "is entitled to the logical inference that [seller] would not hire a third-party to call the plaintiff unless expected to obtain some benefit in return"). Moreover, the fact that, on an ongoing basis, Defendants provided scripts, proprietary pricing/quote information, and other material *support* to the telemarketing lead generation at issue, is itself sufficient to plausibly plead ratification. Compl. ¶¶ 15, 28-29; *see Saccameno v. Ocwen Loan Servicing*, LLC, 372 F. Supp. 3d 609, 635 (N.D. Ill. 2019) ("[R]atification … may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an unauthorized transaction.").

In short, Chubb and HII have continued to gain business from the illegal telemarketing scheme alleged in Plaintiff's Complaint, even though they had been placed on notice of the probable illegality of such. Defendants each "manifested assent" to the telemarketing at issue by "knowingly accept[ing] the benefits of their lead generators' nonconsensual, automated calling[.]" Compl. ¶ 30. The Complaint thus plausibly alleges each Defendant's liability by ratifying the telemarketing at issue, and their motions to dismiss should, therefore, be denied.

**C.      Plaintiff Adequately Pleaded an ATDA Claim Against Both Defendants.**

As is relevant here, the Illinois Automatic Telephone Dialer Act ("ATDA") prohibits: (1) playing prerecorded messages during telemarketing calls placed by an autodialer, without consent, 815 ILCS 305/30(b) (Count II), and (2) impeding, or "spoofing" caller ID on

telemarketing calls. 815 ILCS 305/15(d) (Count III). Those sections state:

> Section 305/30(b) – It is a violation of this Act to play a prerecorded message placed by an autodialer without the consent of the called party.

> Section 305/15(d) – An autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number.

These sections are "standalone," in the sense that, other than the definitions, they do not rely upon any other statutory provision to say what is prohibited.

Chubb points to 815 ILCS 305/10, arguing that this section operates to modify the entire ATDA, restricting all of the law's prohibitions so that they only cover calls that originate in Illinois. That provision reads:

> Section 305/10 - Jurisdiction. No person shall operate an autodialer in this State except in accordance with this Act.

Chubb's interpretation is entirely based upon the title heading, "Jurisdiction," which it misleadingly calls the "jurisdictional statement." However, review of the rest of the ATDA makes clear that this section is merely an *additional* prohibition against use of autodialers, rather than a limitation upon the Act's scope. For example, Section 305/15(a) uses language identical to Section 305/10: "No person shall operate an autodialer in this State…[,]" and Section 305/15(b) takes a variation, "All autodialers operated within the State of Illinois shall disconnect…." In contrast, the sections at issue in this case, 305/30(b) and 305/15(d), do not contain any similar geographically-limiting language, nor do the enforcement paragraphs of Section 305/30(c) and (c-5), which simply state, "Any customer injured by a violation of this Act may bring an action…." Because the Complaint alleges that Defendants violated Sections 305/30(b) and 305/15(d), Plaintiff has stated a claim.

Chubb's reliance on the title of Section 305/10, too, is unavailing. Canons of statutory

23

construction as applied in Illinois make clear that, "as a rule, the words of the heading, being more general, will not control the more specific words of the act." *Ill. Bell Tel. Co. v. Ill. Commerce Comm'n*, 362 Ill. App. 3d 652, 662, 840 N.E.2d 704, 713 (Ill. App. Ct. 2005) (quoting 2A N. Singer, Sutherland on Statutory Construction § 47:14, at 256 (6th ed. 2000)) (internal quotation marks omitted). The Legislature is assumed to understand this canon. *Id*. The text of the section has nothing to do with jurisdiction; instead it contains a prohibition that looks substantially similar – and in some cases identical – to the Act's other, complementary, prohibitions. If the Legislature had truly wanted to limit the entire Act so it applies to calls made from Illinois, only, it would have done so through some medium other than a title heading. For example, the Legislature could have defined "autodialer" to include equipment located in Illinois, only, but elected not to do so. 815 ILCS 305/5(a). The only reasonable interpretation of Section 305/10 is that it contains a standalone and additional prohibition against use of autodialers that are located within the geographical confines of Illinois, which would encompass calls launched from Illinois-based equipment into other states.

On top of the above, the legislative history makes absolutely clear that ATDA was intended to "appl[y] to all [autodialers], not only located in the State of Illinois, but located outside the state as well." Ill. House Tr. at 46 (May 16, 1991).[32]

Although the argument is not developed, Chubb's brief also seems to suggest that vicarious liability might not be available for violations of the ATDA. This is wrong. Judge Leinenweber denied a motion to dismiss ATDA claims on the ground that the plaintiff had failed to properly plead vicarious liability in *Bakov v. Consol. Travel Holdings Grp., Inc.*, 2016 WL 4146471, at *3 (N.D. Ill. Aug. 4, 2016); *see also United States v. Dish Network LLC*, 256 F.

---

[32]     *See* http://www.ilga.gov/house/transcripts/htrans87/HT051691.pdf. "[A] statute's legislative history and debates are valuable construction aids in interpreting an ambiguous statute." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398, 789 N.E.2d 1211, 1214 (2003).

Supp. 3d 810, at 818, 830 & 962 (C.D. Ill. 2017) (finding court had supplemental jurisdiction over vicarious ATDA claims against out-of-state seller and that "Illinois proved a prima facie case that 5,830 prerecorded telemarketing calls to numbers with Illinois area codes[,]" but ultimately granting summary judgment to defendant due to prior business relationship exception not applicable here). Thus, for the same reasons Plaintiff adequately pleaded Defendants' direct or vicarious liability as to his TCPA claims, supra, he adequately pleaded his ATDA claims.

This makes sense: the ATDA was enacted as part of the Illinois Consumer Fraud Act, and the Legislature has created a parallel relationship between the two in 815 ILCS 505/2Z: "Any person who knowingly violates the … Automatic Telephone Dialers Act, commits an unlawful practice within the meaning of [the Consumer Fraud Act]." As is generally the case with statutory provisions like the IFCA and the ATDA, vicarious liability is available through principles of agency. *Rasgaitis v. Waterstone Fin. Grp., Inc*., 2013 IL App (2d) 111112, ¶ 47, 985 N.E.2d 621, 635 (Ill. App. Ct. 2013) (refusing to dismiss consumer fraud claim because pursuant to the Restatement of Agency, apparent agency authority properly pleaded). After all, laws like the Consumer Fraud Act and the ATDA were enacted to protect consumers, and should be "liberally construed to effectuate this purpose." *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 234, 848 N.E.2d 1, 32 (2005).

HII's argument that Plaintiff's ATDA allegations insufficiently plead an "autodialer" are also wrong. *See* Dkt. 20, HII Mot. at 15-16.[33] Plaintiff does not merely state in conclusory fashion that an autodialer was used: Apart from the statutory definition and specific allegations about how the calls were placed, he alleges hearing the <u>same</u> prerecorded message across

---

[33] An "autodialer" under the ATDA is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message, the term does not include any device associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5/(a).

multiple calls, that he had to proceed through an automated "press 1" prompt to even speak with a live person, that the caller spoofed caller identification, and voluminous calling, all of which together plausibly allege the use of an autodialer. Compl. ¶¶ 13, 18-19, 21, 23, 38; *see Clark v. Allied Interstate LLC*, 2017 WL 2903358, at *4 (N.D. Ga. Jan. 20, 2017) (citing decisions that an autodialer can be pleaded via allegations of repeated calling, use of a prerecorded voice, or that the consumer heard a pause or click before dialer connected call to an agent); *cf. Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016).

Because Plaintiff adequately pleaded Defendants' liability for violations of the ATDA, Defendants' motions to dismiss should be denied.

### D. Nationwide Classes Can Indeed Be Certified.

The Seventh Circuit recently squarely rejected Defendants' personal jurisdiction argument that this Illinois-based federal court cannot exercise jurisdiction over non-Illinois members of a putative nationwide class action in *Mussat v. IQVIA, Inc.*, --- F.3d ----, 2020 WL 1161166, at *1 (7th Cir. Mar. 11, 2020). Because *Mussat* is controlling and squarely on point, no additional argument is necessary and the motions should be denied as to this argument.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Respectfully submitted,

Dated: April 8, 2020                              CHRISTOPHER BILEK, individually and
                                                  on behalf of others similarly situated

                                                  By:  */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2020, I electronically filed the foregoing with the Clerk

of the Court, using the CM/ECF system, which will send notification of such filing to all counsel

of record.


*/s/ Alexander H. Burke*

27