# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BILEK, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. 1:19-CV-08389 |
| v. | )<br>) Honorable Charles P. Kocoras |
| FEDERAL INSURANCE COMPANY, HEALTH INSURANCE INNOVATIONS, INC., and DOES 1-10, | )<br>) Magistrate Judge Susan E. Cox<br>)<br>) |
| Defendants. | |

## DEFENDANT HEALTH INSURANCE INNOVATIONS, INC.'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Plaintiff's Combined Opposition to Defendants' Motions to Dismiss ("Opposition") (Dkt. 32) further confirms that his claims and assertion of personal jurisdiction against Health Insurance Innovations, Inc. ("HII") are based on nothing more than pure speculation and fails to show how Plaintiff has alleged any plausible claims HII. For the reasons set forth in HII's Motion to Dismiss and below, the Complaint should be dismissed.

## ARGUMENT

**I.    Plaintiff's allegations against HII are pure speculation.**

Plaintiff's allegations against HII relating to the calls at issue are as follows:

- Plaintiff alleges that he received two calls to his cellular telephone from a third-party (not HII) on September 20, 2019 and September 26, 2019.  (Compl. at ¶¶ 12, 16.)

- Plaintiff admits that HII did not initiate either of those two calls.  (*Id.*, ¶ 2.)

- Plaintiff then alleges that he was connected to a live agent who provided Plaintiff with a quote for health insurance "underwritten by Chubb" that was for "Federal Insurance Company" or a "different member of the 'Chubb' family of companies."  (*Id.*, ¶¶ 14, 19-20.)

- Plaintiff does not allege that HII was ever mentioned during either call or that he ever received any follow-up information from anyone that mentioned HII.

That's it.  There is literally nothing about the two calls Plaintiff allegedly received that indicates or otherwise suggests that HII had any connection whatsoever with those calls.

Accordingly, Plaintiff attempts to manufacture claims against HII based on nothing but pure speculation and conjecture.  However, claims based on speculation are improper and should be dismissed.  *See*, *e.g.*, *Urban Elevator Service, LLC v. Stryker Lubricant Distributors Inc.*, 2015 WL 6736676, at *1 (N.D. Ill. Nov. 4, 2015) (dismissing complaint because plaintiff's allegations did not "raise the right to relief above the speculative level" where defendant was not alleged to have sent the fax, its products were not advertised in the fax, and it was alleged only to be a "liaison which organizes meetings"); *Hyperquest, Inc. v. NuGen I.T., Inc.*, 627 F. Supp. 2d

1

884, 894 (N.D. Ill. 2008) (dismissing for lack of personal jurisdiction and finding that plaintiff's allegation that, because it resided in Illinois, "the defendants *must* have acted with an intent to affect an Illinois interest" was too speculative to establish personal jurisdiction).

Plaintiff argues that his speculation is somehow made proper by virtue of his conclusory contention that, somehow, HII knows who was hired to call Plaintiff. (Opposition at 13.) But Plaintiff then admits that his rank speculation that "[he] knows HII was involved" is based *entirely* on his unexplained "prior experience with HII's back-office workings" and so-called "substantively identical calls." (*Id*.) Plaintiff, however, offers no details or basis for his so-called "prior experience" because he has no personal prior experience with HII, who was never mentioned on the two calls. The "prior experience" to which Plaintiff refers is nothing more than an attempt to bolster his speculative claims against HII by grafting unsubstantiated allegations made in an unrelated lawsuit involving different factual allegations on to this lawsuit.

Plaintiff does not allege a plausible claim that the caller is an agent of HII, that HII contracted with Chubb or Federal Insurance Company, or that HII contracted with (much less authorized) the third-party to make calls on its behalf under an agency, apparent authority, or ratification theory. As in *Urban Elevator* and *Hyperquest*, Plaintiff's allegations against HII do not "raise the right to relief above the speculative level" and should be dismissed.

## II. The Court must disregard Plaintiff's new allegations and documents.

Plaintiff seeks to introduce new allegations not found in the Complaint to support his speculative and implausible allegations about HII. Plaintiff also seeks to introduce information from unrelated lawsuits, conclusory allegations of calls allegedly made to non-parties, emails allegedly sent to non-parties, and an excerpt from a deposition transcript to support the allegations in the Complaint. But the Court's review here is "limited to the four corners of the

complaint." *Batteast Construction Company, Inc. v. Pacific Building Commission of Chicago*, 195 F. Supp. 2d 1045, 1051 (N.D. Ill. 2001). Indeed, a plaintiff cannot amend a complaint by raising new claims in response to the motion to dismiss. *See Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 964, 972 (N.D. Ill. 2008); *Gale v. Hyde Park Bank*, 2002 WL 31356405, *2 (N.D. Ill. Oct. 18, 2002). Except for limited circumstances not applicable here, if a response to a motion to dismiss includes additional materials, the court must ignore those documents. *See Antelis v. Freeman*, 799 F. Supp. 2d 854, 868 (N.D. Ill. 2011).

Plaintiff nonetheless cites to *Early v. Bankers Life & Cas. Co.*, 659 F.2d 75, 79 (7th Cir. 1992) to contend that a defendant may allege any facts that are consistent with the complaint in response to a motion to dismiss. This vastly overstates the Seventh Circuit's narrow exception to the rule prohibiting consideration of extraneous documents, which permits review of such documents when they are specifically referenced in the complaint and central to the claim. *See, e.g., Shamin v. Siemens Industry, Inc.*, 854 F. Supp. 2d 496, 506 (N.D. Ill. Mar. 30, 2012) (declining to consider EEOC questionnaire and attached letter referenced for the first time in response to motion to dismiss); *Ventures Assoc. Corp. v. Zenith Data Systems*, 987 F.2d 429, 431 (7th Cir. 1993) (admitting letters attached to a motion to dismiss as central to the claim because complaint referred to the letters which established the parties' relationship).

There is no basis to consider such extraneous documents here. The issues before the Court – whether the Court has personal jurisdiction over HII and whether Plaintiff's claims rise above the speculative level – are to be determined based solely on the complaint's allegations.

### III. Personal jurisdiction over HII does not exist.

In his Opposition, Plaintiff does not address (much less dispute) HII's general jurisdiction argument, thus conceding that general jurisdiction does not exist over HII. Instead, Plaintiff

3

limits his argument to the issue of specific jurisdiction, but fails to explain how the two phone calls that Plaintiff admits were not made by HII and during which HII was never mentioned somehow subject HII to personal jurisdiction in Illinois.

To establish personal jurisdiction, the claims must arise out of contacts the defendant itself created. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985); *see GCUI-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009) (for specific jurisdiction, the action must directly arise out of the specific contacts between the defendants and the forum state). Plaintiff, however, fails to allege any non-speculative (much less plausible) facts that his claims arise out of contacts that HII itself created because there is no dispute that HII did not make the two phone calls to Plaintiff. *See Weller v. Flynn*, 312 F. Supp. 3d 706 (N.D. Ill. May 21, 2018) (plaintiff's general allegations that defendants caused some injury in Illinois or targeted Illinois were insufficient to subject defendant to specific personal jurisdiction); *Urban Elevator Service, LLC*, 2015 WL 6736676, at *1; *Hyperquest, Inc.*, 627 F. Supp. 2d at 894.

Here, the only calls relevant to the analysis of specific jurisdiction are two calls allegedly made to Plaintiff. However, Plaintiff admits (as he must) that HII did not make either of those calls and that HII is not mentioned in those calls. Plaintiff also does not (and cannot) allege that he ever received *any* communication from HII (telephonically, written or otherwise) to suggest that HII had any involvement whatsoever with the two calls that are the subject of the Complaint. Instead, Plaintiff offers only speculative, conclusory allegations that HII facilitated the telephone solicitations to Plaintiff and other Illinois class members through an unknown lead generator who (Plaintiff speculates) used HII's portal to provide insurance quotes during the calls. These purported allegations do not establish this Court's jurisdiction over HII.

First, Plaintiff's allegations to support specific personal jurisdiction are entirely speculative and do not plausibly allege a basis for personal jurisdiction here. Plaintiff admits that HII did not make either of the two telephone calls at issue, and does not allege that HII was ever mentioned on either call. (Compl., ¶ 2.) Plaintiff also does not allege that he received any other oral or written communications from HII (or anyone else) that ever mentioned HII, directly or indirectly. Without any basis whatsoever to bring HII into this lawsuit, Plaintiff attempts to manufacture personal jurisdiction by relying on conclusory allegations reflecting nothing more than Plaintiff's (and his counsel's) speculation and conjecture about what role HII *could* have had if it were involved with the two phone calls. Plaintiff bases his speculation on information from an unrelated lawsuit against HII that has no connection whatsoever to the calls at issue here. If Plaintiff has no factual basis to assert that HII had any connection whatsoever to the two calls allegedly made to him, he then cannot plausibly allege that HII "caused the calls . . . to be made", "knowingly and actively participated" in the calls, or otherwise "facilitated" the calls to Plaintiff.

Second, while this Court should not consider excerpts from a deposition in an unrelated case submitted in a response to a motion to dismiss, the excerpts from Sean Duffie's deposition relied on by Plaintiff merely state that Sean Duffie used HII's portal to provide insurance quotes *after* a phone call was made. Sean Duffie did *not* testify that any phone calls were made to Plaintiff or that HII's portal was used in connection with the two calls made to Plaintiff (much less that HII itself made the calls). There is nothing about the phone calls even referenced in the portions of the transcript cited by Plaintiff.

Finally, the cases cited by Plaintiff stand for no more than non-controversial general principles of personal jurisdiction in the context of the TCPA, and they are of no help to

5

Plaintiff. (*See* Opposition at 7-9.) To the contrary, they serve only to underscore the deficiency in Plaintiff's allegations. *See Mey v. Castle Law Group*, 2019 WL 4579290, at *4 (N.D.W. Va. Sept. 20, 2019) (defendant was specifically alleged to have called the plaintiff in West Virginia 25 times); *Smith v. Royal Bahamas Cruise Line*, 2016 WL 232425, at *2 (N.D. Ill. Jan. 20, 2016) (defendant was specifically alleged to have made multiple calls to Illinois plaintiff); *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645-46 (N.D. Ill. Feb. 9, 2017) (same); *Payton v. Kale Realty, LLC*, 2014 WL 4214918, at *4 (N.D. Ill. Aug 26, 2014) (defendant was specifically alleged to have contracted with a corporation in Illinois and to have sent violative text messages into Illinois); *Luna v. Shac, LLC*, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (defendant specifically alleged to have sent unsolicited text messages into the forum state); *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) (same). Unlike all of these cases, there is no proper allegation here that HII made the calls at issue, was mentioned on the calls at issue, or that Plaintiff received any other communication (written or otherwise) even mentioning HII. Plaintiff has failed to allege this Court's jurisdiction over HII.

      **IV.    HII is not directly liable because it did not make the calls.**

Plaintiff alleges that HII is directly liable for making the two phone calls based on its alleged participation in the phone calls. Plaintiff recognizes, however, that HII did not make either of the phone calls, which Plaintiff admits were made by a third-party. Plaintiff does not cite any authority from the Seventh Circuit to support his argument that HII is somehow directly liable for phone calls it did not actually place. *See Smith v. State Farm Mutual Automobile Insurance Company*, 30 F. Supp. 765, 771 (N.D. Ill. Aug. 11, 2014) (only person who actually placed the allegedly unlawful telemarketing calls could be directly liable).

Instead, Plaintiff cites *In re Rules & Regs. Implementing the TCPA,* 30 FCC Rcd. 7961, 7980, ¶30 (2015) ("TCPA Rules and Regs") to argue that HII is directly liable because it was so involved in the placing of the telephone calls as to be deemed to have initiated them. However, Plaintiff did not allege the level of involvement outlined in the TCPA Rules and Regs. *See id.* at 7980 (factors include willfully enabling fraudulent spoofing, blocking caller ID, offering functionality to clients, or knowingly allowing clients to use a calling platform for unlawful purposes). Here, Plaintiff does not allege, nor could he, that HII provided the calling platform used by any third-party lead generator. Moreover, Plaintiff does not allege *he* received an email quotation for goods and services from HII or received any email quotation for that matter. Given that Plaintiff has pleaded that another entity made the phone calls at issue, and given that Plaintiff does not and cannot allege the level of involvement required under the TCPA Rules and Regs to be deemed to have initiated them, he cannot plausibly allege that HII was sufficiently involved in the telemarketer's conduct as to impute direct liability.

In a final effort to save his direct liability claim, Plaintiff advances the novel argument that the TCPA somehow causes a "broader set of characters to have liability with regard to 'making' calls than 'initiating' them." (Opposition at 9.) But the distinction Plaintiff attempts to manufacture has no basis in law. To the contrary, courts in this District already have determined that Plaintiff's argument is without merit because the TCPA's phrase "make any call" means "initiate any telephone call." *Warciak v. Nikil, Inc.*, No. 16 C 5731, 2017 WL 1093162, at *1 (N.D. Ill. Mar. 23, 2017) ("[t]he FCC's implementing rule interprets the statutory phrase 'make any call' to mean 'initiate any telephone call'") (citing 47 C.F.R. § 64.1200(a)(1)); *Serban v. CarGurus, Inc.*, No. 16 C 2531, 2018 WL 1293226, at *3 (N.D. Ill. Mar. 12, 2018) (same); *see also De la Cabada v. Ytel, Inc.*, No. 19-cv-07178-JSC, 2020 WL 1156909, at *3 n. 5 ("[t]he

7

FCC, however, uses 'to make a call' and 'to initiate a call' interchangeably; that is, the terms have the same meaning and legal effect"). Because Plaintiff concedes (as he must) that HII did not "initiate" the two calls, his claim that HII is directly liable for those calls must fail.

### V. Plaintiff has failed to plead any agency relationship.

HII's opening brief demonstrated that the Complaint failed to allege facts establishing the existence of an agency relationship. In response, Plaintiff tellingly relies, not on the allegations in the Complaint, but on irrelevant declarations, internet printouts, and other extraneous matters. Yet "[a] complaint relying on agency must plead facts, which, if proved, could establish the existence of an agency relationship." *Network Cargo Systems Inter., Inc. v. Pappas*, 2014 WL 1674650, at *1 (N.D. Ill. Apr. 25, 2014). Plaintiff's effort to rehabilitate his Complaint with extraneous facts should be rejected. Plaintiff fails to establish the existence of an agency relationship, whether by actual authority, apparent authority, or ratification.

#### A. Plaintiff does not adequately plead implied actual authority.

"Implied authority is that authority which is inherent in an agent's position and is, simply, actual authority provided through circumstantial evidence." *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998). Actual authority "can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Id.* A plaintiff must plead facts that plausibly allege that implied authority to make violative calls was inherently contained in the caller's position. *See Bridgeview Health Care Center, Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016) (no implied actual authority in TCPA case).

Here, Plaintiff does not allege that HII's name was ever mentioned in any of the phone calls that form the basis of his TCPA and IATDA claims. Plaintiff also does not allege that HII

8

entered into an agreement with the person or entity that actually called Plaintiff. Instead, Plaintiff argues that HII "exercised direct control over the lead generation at issue" (Opposition at 12), but does not support that argument with anything other than his own *ipse dixit*. Indeed, Plaintiff attempts to bolster his conclusory and speculative claim by citing to what Plaintiff characterizes as an "exemplar contract" between HII and a lead generator (taken, presumably, from an unrelated lawsuit) but which Plaintiff does *not* allege has anything to do with the calls at issue here. Plaintiff's Opposition is filled with conclusory and general allegations directed to HII's alleged business model as a whole, but fails to make any specific allegations that HII actually contracted with the company that called Plaintiff (or with Chubb), paid the company that called Plaintiff, issued a quote to Plaintiff, or was involved in any way with the calls to Plaintiff.

Plaintiff's reliance on *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 832 (N.D. Ill. Apr. 18, 2016) is misplaced. The question in *Aranda* was not whether the plaintiff had stated a plausible claim to overcome a motion to dismiss. In *Aranda,* the court determined there was summary judgment evidence to enable a jury to infer that a company authorized the call campaign and had control over the manner and means by which it was conducted, in part, because there was evidence in the form of actual agreements in the record that stated the caller shall provide the company with an exact telephone script along with an exact audio file of each survey. *Id.* Unlike in *Aranda*, Plaintiff does not and cannot plausibly allege that HII controlled the manner and method of the sale of the Chubb product. The other cases upon which Plaintiff relies also are inapposite. *See Gould v. Farmers Insurance Exchange*, 288 F. Supp. 3d 963, 970 (E.D. Mo. 2018) (the text messages at issue stated they were from agents of the defendant); *Mauer v. American Intercontinental University, Inc.*, 2016 WL 4651395, at *4 (N.D. Ill. Sept. 7, 2016) (plaintiff alleged that *the defendants themselves* called the plaintiff's associate

9

immediately after the associate provided his number to the alleged agent).

In order to state a plausible claim resting upon actual authority, Plaintiff must plead sufficient factual allegations that demonstrate the relationship, including the level of control and the unequivocal intent to be bound. *Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998); *Moriarty,* 155 F.3d 859, 866 (7th Cir. 1998) (the unequivocal intent to be bound principle must inform the agency analysis); *see also Urban Elevator Service, LLC*, 2015 WL 6736676, at *1 (dismissing complaint and finding that the plaintiff's allegations did not "raise the right to relief above the speculative level" where the defendant was not alleged to have sent the fax in question, its products were not advertised in the fax, and it was alleged only to be a "liaison which organizes meetings"). Without such basic and essential factual allegations, the Court should ignore Plaintiff's conclusory allegations of implied actual authority.

### B. Plaintiff does not plausibly plead apparent authority.

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." *In re DISH Network*, 28 F.C.C. Rcd. at 6587; *see also* Restatement (Third) of Agency § 3.03 cmt. b; *Smith*, 30 F. Supp. at 777-78. The conduct of the alleged principal, not that of the alleged agent, determines whether the principal can be held liable based on a theory of apparent authority. *Bridgeview Health Care*, 816 F.3d at 939.

Plaintiff fails to allege that HII made any representation to Plaintiff that any caller was authorized to act on its behalf. Ignoring the clear pleading requirements, Plaintiff does not allege that he received any emails from HII or that HII's name was ever mentioned during a phone call he received. Instead, Plaintiff attempts to manufacture apparent authority by listing a hodgepodge of speculative allegations about the relationship between HII and Chubb, but about

10

which he does not claim to have had any personal knowledge. (*See*, *e.g.*, Opposition at 15.) This failure to allege any manifestation by HII to Plaintiff is fatal.

Plaintiff also argues that he was given the "impression" that apparent authority exists because HII allegedly "participat[es in] the calls directly by emailing quotes using its own tradename while the call recipient is still on the line." (Opposition at 15.) But, again, Plaintiff is improperly attempting to manufacture a claim against HII by grafting allegations from another, unrelated lawsuit onto his claim here. Notably, Plaintiff does not allege that he ever received any communication whatsoever from HII at any time, including the "email quote" using HII's tradename that he relies upon in his Opposition but does not allege he ever actually received. Indeed, Plaintiff's argument that it is HII's practice and "course of dealings . . . [to] email[] call recipients using its tradename during the calls" (Opposition at 16), belies Plaintiff's entire theory of the case and underscores the implausibility of his claims against HII. If HII is the party who directly or indirectly initiated the two calls to Plaintiff, and if the apparent agency relationship is based on HII's pattern and practice of sending email to call recipients during the calls using HII's trade name, then Plaintiff should have received an email from HII. But he never did. Thus, Plaintiff's own arguments and allegations contradict his claims against HII and underscore the implausible and speculative nature of his Complaint as it pertains to HII.

Plaintiff's reliance on *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *1, *3 (N.D. Ill. Oct. 18, 2017) is misplaced. In *Vessal*, unlike here, the plaintiff alleged that the callers identified the defendant by name on the call and alleged that each of four specifically identified callers was a third-party dealer for the defendant. Likewise, *Mauer*, 2016 WL 4651395, at *4, is inapposite because the plaintiff in that case alleged that *the defendants themselves* called the plaintiff's associate immediately after the associate provided his phone number to the alleged

11

agent. Here, in contrast, Plaintiff does not allege that HII ever contacted him or was ever mentioned in any manner whatsoever before, during, or after the two calls he received. Neither *Vessal* nor *Mauer* involved a situation where a plaintiff failed to plead plausible facts to support that HII actually spoke, wrote, or otherwise acted toward a plaintiff to make a plaintiff reasonably believe that HII had consented to an action done on its behalf by someone purporting to act for it. *See Bridgeview Health Care*, 816 F.3d at 939 (finding no apparent authority where ad did not even reference company's name).

### C. Plaintiff does not plausibly plead ratification.

Plaintiff fails to plead a plausible claim for ratification. Instead, Plaintiff contends – based on allegations in unrelated lawsuits and despite being unable to allege even that the calls were made by or on behalf of HII – that HII knowingly and actively accepted business that originated through a telemarketing scheme directed to Plaintiff. This attenuated non-connection is wholly insufficient to create agency by ratification between complete strangers. Because Plaintiff does not allege a plausible, non-speculative claim that HII contracted with the callers, or that HII retained any actual benefit from the calls to Plaintiff, he has failed to plead ratification.

To begin, Plaintiff never purchased any products as a result of the calls. *See Toney v. Quality Resources, Inc.*, 75 F. Supp. 727, 746 (N.D. Ill. 2014); *see also Smith*, 30 F. Supp. 3d at 779 ("[w]hile Nationwide's insurance agents may have accepted leads from Variable, Plaintiffs fail to plead that Nationwide itself – as opposed to its insurance agents – obtained any benefit from Variable's calls to Plaintiffs"). In a failed effort to sidestep this fact, Plaintiff cites to *Dolemba v. Illinois Farmers Insurance Company*, 213 F. Supp. 3d 988, 997 (N.D. Ill. 2016) and *Gould v. Farmers Insurance Exchange*, 288 F. Supp. 3d 963, 970 (E.D. Mo. 2018). But in *Dolemba*, unlike here, the plaintiff was able to plausibly allege that the defendant had retained a

12

benefit from the calls because the plaintiff alleged that the defendant's website explicitly identified the caller as its agent and the caller explicitly mentioned the defendant by name on the call. *Dolemba*, 213 F. Supp. 3d at 997. Likewise, in *Gould*, the text messages at issue stated they were from agents of the defendant. *Gould*, 288 F. Supp. 3d at 970. Here, in contrast, HII was never mentioned, and Plaintiff provides nothing more than rank speculation that any relationship exists between the caller and HII, much less that Plaintiff retained any benefit from the calls.

Looking past Plaintiff's conclusory allegations of unrelated lawsuits and telemarketing campaigns, Plaintiff is left with only general, conclusory allegations that HII "should have known" of the alleged misdeeds of the unspecified telemarketers. *See Abrahamson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing vicarious liability TCPA claim because allegations "were conclusory in nature").

In an effort to save his claim, Plaintiff's response relies on quotes allegedly emailed to an individual in a separate lawsuit and argues that HII therefore had notice of telemarketing to Plaintiff. The Court should reject this argument because it relies exclusively on documents and allegations outside of the four corners of the Complaint. But even were the Court to consider these extrinsic documents, they say nothing about whether HII ratified phone calls allegedly made to Plaintiff – calls in which HII was never mentioned, and in connection with which Plaintiff does not allege that he received any emailed quote from HII.

None of Plaintiff's cited cases support upholding a ratification theory on such sparse and attenuated allegations. In *Keim*, 2015 WL 11713593, at *1, unlike here, the plaintiff properly alleged that Pizza Hut's franchisees had hired a text-message marketing company to send marketing text messages on their behalf with Pizza Hut's specific authorization. *Id.* at *1. In *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 100 (N.D. Ill. Mar. 28, 2013), the

13

principal did not dispute that it retained the benefit of calls placed by its agent in connection with phone calls and did not dispute that the caller was its agent. And both *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019), and *NECA-IBEW Rockford Local Union 364 Health and Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1059-60 (7th Cir. 2013), were rulings based on summary judgment evidence where there was no dispute as to the existence of an agency relationship and the record evidence demonstrated the defendant ratified an unexecuted contract by knowingly accepting its benefits.

Plaintiff does not and cannot properly allege any of the facts that supported ratification in these cases, Plaintiff fails to cite any authority that supports finding ratification on the thin, speculative allegations Plaintiff has made here. Because Plaintiff's allegations cannot support his ratification claim, Plaintiff's complaint should be dismissed.

**VI.     Plaintiff fails to state a plausible claim under the IATDA.**

Placing a call using an autodialer and playing a prerecorded message are elements necessary to state a cause of action for relief under the IATDA. *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. Mar. 20, 2012). Here, Plaintiff concedes that the calls were placed by a third party, not HII. Consequently, Plaintiff has failed to state a plausible claim that HII is liable for placing the calls or playing a prerecorded message.

HII does not concede that vicarious liability exists under the IATDA, and Plaintiff fails to cite any controlling legal authority for the proposition that vicarious liability exists for violation of the IATDA. However, if a party may be vicariously liable under the IATDA, HII adopts the arguments set forth in Section V above to establish why Plaintiff has failed to state a plausible claim against HII for a violation of the IATDA even under a theory of vicarious liability. The two cases upon which Plaintiff relies are misplaced. Specifically, *Bakov v. Consol. Travel*

*Holdings Grp., Inc.*, 2016 WL 4146471 (N.D. Ill. Aug. 4, 2016) reflects no analysis whatsoever as to whether vicarious liability exists under the IATDA, and the court in *U.S. v. Dish Network, LLC*, 256 F. Supp. 3d 810, 962 (C.D. Ill. 2017), expressly did not consider the issue of vicarious liability because, unlike HII here, "Dish concedes that it is responsible for the calls".

Finally, Plaintiff's sparse allegations regarding the two calls he received are not sufficient to allege that the calls were made using an automatic telephone dialing system. In response, Plaintiff argues that his claim is saved because he alleges that he heard the same prerecorded message in both calls, used an automated prompt to speak with a live person, and that the call "spoofed" the caller I.D. (Opposition at 25-26). Plaintiff also argues that his receipt of two calls (which he characterizes as a "voluminous" number of calls) also is sufficient to allege the use of an autodialer. (*Id.*) Yet, alleging that a defendant made calls using an automatic telephone dialing system, using an artificial or prerecorded voice, or using both does not create any inference supporting the allegation that calls were made using an automatic telephone dialing system, and are insufficient to state a facially plausible claim. *See Bonanno v. New Penn Fin., LLC*, 2017 WL 3219517, at *6 (M.D. Fla. July 28, 2017). The two cases upon which Plaintiff relies are also inapposite. *See Clark v. Allied Interstate LLC,* 2017 WL 2903358 (N.D. Ga. Jan. 2017) (Georgia court noting that the plaintiff had alleged that the calls included "clicks, beeps, or delays" and continued after she informed the caller not to call her again); *Izsak v. Draftkings*, Inc., 191 F. Supp. 3d 900 (N.D. Ill. 2016) (case involving text messages, not phone calls, and visual evidence considered by court in concluding that an autodialer was used).

## **CONCLUSION**

For all the reasons stated herein and in HII's opening brief, HII respectfully requests that this Court grant the Motion to Dismiss.

Dated: June 19, 2020                                     Respectfully submitted,

                                                               HEALTH INSURANCE INNOVATIONS, INC.

                                          By:     /s/ Timothy A. Hudson
                                                                   One of Its Attorneys

Timothy A. Hudson
TABET DIVITO & ROTHSTEIN, LLC
209 South LaSalle St., Ste. 700
Chicago, IL  60604
Phone: 312-762-9476
Fax: 312-762-9451
thudson@tdrlawfirm.com
ARDC No. 6271244