IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BILEK, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Case No. 1:19-CV-08389 |
| FEDERAL INSURANCE COMPANY, HEALTH INSURANCE INNOVATIONS, INC., et al., | ) ) ) ) | Honorable Charles P. Kocoras |
| Defendants. | ) | |

**DEFENDANT FEDERAL INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Federal Insurance Company ("Federal") respectfully submits this reply in support of its motion to dismiss the Complaint filed by Christopher Bilek ("Bilek").

**INTRODUCTION**

In his Complaint, Bilek improperly seeks to blend together allegations about two distinct and unrelated corporate defendants. Consistent with this tactic, Bilek has now filed a combined opposition to the Defendants' separate motions to dismiss. The combined opposition also improperly fails to separately analyze the alleged acts and omissions of each Defendant. For this reason, and for the other reasons stated below, this action should be dismissed.[1]

**ARGUMENT**

**I.   Bilek's Response Brief Includes Improper Evidence that the Court Cannot Consider.**

In an attempt to cure the defects in his Complaint, Bilek has submitted several exhibits with his Response Brief. It is improper to attach exhibits for purposes of responding to a Rule

---

[1] Federal incorporates by reference all applicable arguments asserted by HII in its reply brief in support of its respective motion to dismiss.

1

12(b)(6) motion to dismiss. *See Chicago Dist. Council of Carpenters Welfare Fund v. Angulo*, 169 F.Supp.2d 880, 883 n.1 (N.D. Ill. 2001) ("When ruling on a motion to dismiss, pursuant to Rule 12(b)(6), a court must not look to materials beyond the Pleading itself…[and] exhibits are inappropriate for consideration by this court in ruling on this motion.") (abrogated on other grounds by *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)); *see also Alito v Marshall Fields & Co*., 77 F.3d 934, 936 (7th Cir. 1996) (when ruling on motion to dismiss, pursuant to Rule 12(b)(6), court "may not look to materials beyond the pleading itself"). Accordingly, the Court should disregard the new materials.

While some cases have deviated from this general rule and determined that the court may have limited discretion to consider such an attachment, those cases have also held that "the court should not consider newly alleged claims that are not raised in the complaint or facts that are not consistent with the complaint's allegations." *Sterling v. Kazmierczak*, 983 F.Supp. 1186, 1189 (N.D. Ill. Nov. 25, 1997); *see also*, *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). Furthermore, consideration of such supplemental documents is generally limited to situations where a document, such as a contract, is specifically referred to in the complaint but is not attached to it, and where the court's decision on a motion to dismiss turns on interpretation of the document. *See, e.g.*, *Vazquez v. Central States Joint Bd.*, 547 F.Supp.2d 833, 850 n.6 (N.D. Ill. Feb. 29, 2008) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) ("Documents attached to a motion to dismiss may be considered if they are referred to in the complaint and are central to a plaintiff's claim but this is a 'narrow exception aimed at cases interpreting, for example, a contract'")).

This Court should reject Bilek's proffer of additional documents and should not consider them in deciding Federal's motion to dismiss. For example:

- *Exhibit 2* to Bilek's brief appears to be a portion of a transcript of a deposition of a former HII employee that was taken in an entirely unrelated TCPA lawsuit brought by Mary Bilek. Any lawsuit filed by Mary Bilek has nothing to do with *this case*. Mary Bilek is not a party to *this case*. There is no reference to Mary Bilek in the Complaint filed in *this case*. Moreover, there is no indication in the Complaint or any other paper filed in *this case* of the relationship, if any, of Mary Bilek to the plaintiff in *this case*, Christopher Bilek. For all these reasons, the fragment of a deposition transcript from an unrelated case has no bearing on *this case*, and specifically no bearing on whether Christopher Bilek's allegations *in this case* are adequately pleaded.

- *Exhibits 1 and 3* to Bilek's brief appear to be excerpts of applications sent by HII to people who are not a part of this lawsuit, and a lead agreement between HII and an unknown entity. Neither document is mentioned in the Complaint filed in *this case*. Nor are these documents relevant to claims made in *this case*, which are based on the calls allegedly made to Bilek.

- *Exhibit 4* to Bilek's brief is a declaration signed by Bilek. In the declaration, Bilek states among other things that the alleged caller "directly informed [him] that the insurance was underwritten by 'Chubb.' I believed the representative when he told me the insurance policy that was being sold during this call was a Chubb policy." (Response Brief, Dkt. No. 35-1, at p. 1). These statements appear to be designed to cure the Complaint's failure to plead whether Bilek personally believed that the calls he allegedly received were made on behalf of Chubb. (Complaint, Dkt. No. 1, at ¶ 20).[2] Exhibit 4 makes entirely new factual allegations. The Court should not consider the declaration because it is nothing more than an impermissible attempt to amend a deficient pleading. *See Car Stereo, Inc. v. The Little Guys Inc.*, 2004 WL 3019298 at *7 (N.D. Ill. Dec. 28, 2004) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("a plaintiff cannot amend its complaint by inserting allegations in its briefing response to a motion to dismiss.")).

The decision in *Early v. Bankers Life and Cas. Co* does not allow this Court to consider the new factual assertions that Bilek makes throughout his response brief and its attachments. 959 F.2d 75 at 78-79. Under the standard of review announced in *Twombly* and *Iqbal*, which both post-dated *Early*, a complaint that contains no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or that fails to allege "more than the mere possibility of misconduct," fails to meet the pleading standard of Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-61 (2007). Bilek's pleading fails that test. Moreover, the *Early* case is distinguishable

---

[2] Bilek uses Chubb and Federal interchangeably throughout his Complaint.

because it was apparent on the face of the plaintiff's complaint that the statute of limitations might bar his wrongful termination claim. For this reason, it was necessary for the *Early* Court to consider information outside the pleadings regarding equitable tolling. Here, nothing inherent in Bilek's Complaint or Federal's motion to dismiss requires interpretation of documents or information outside of the Complaint.

## II. Federal Has No Direct Liability to Bilek.

Bilek argues that both Federal and HHI are directly liable because they somehow both participated in the telemarketing process. (Dkt. No. 32, at 9). This is incorrect.

Bilek first cites to 47 C.F.R. § 64.1200(a)(1)(iii) of the TCPA's regulations, which prohibits the act of "initiating" a nonconsensual phone call. (Dkt. No. 32, at 9). However, Bilek concedes that 47 U.S.C. § 227(b)(1)(A)(iii), which is at issue in this case, does not mention "initiation" and instead refers to "making" a phone call. (Dkt. No. 32, at 9). Despite this concession, Bilek contends without any legal support that "[i]t is clear that Congress intended a broader set of characters to have liability with regard to 'making' calls than 'initiating' them." (Dkt. No 32, at 9). This unsupported legal conclusion is completely contrary to the ordinary understanding of "making a phone call." A single person "makes" a phone call by dialing a phone number.[3] A group of unrelated companies does not "make" calls. For this reason, the regulatory argument fails.

Second, Bilek argues that the Complaint supports direct liability on the part of *HII* for making the calls. Importantly, Bilek provides no support in the Complaint or elsewhere for the notion that *Federal* participated in the alleged calls. *This is because Federal was not involved in*

---

[3] Later in the response brief, Bilek admits that Federal "did not dial the calls at issue." (Dkt. No. 32, at p. 11). One might just as easily say that Federal did not "make" the calls at issue.

*making the alleged calls.* Bilek cannot make sweeping allegations that relate to one defendant and then try to attribute them to the other defendant. Accordingly, Bilek's Complaint fails to allege facts to support a claim that Federal could be directly liable to Bilek, and Bilek's response brief does not (and cannot) remedy that issue.

### III. Bilek Fails to Establish that Federal has Vicarious Liability.

#### A. Bilek's Complaint Does Not Establish Actual Authority Against Federal.

Bilek claims that Federal is liable for the telemarketing at issue because Federal imbued its telemarketing agent with implied actual authority to make the calls. (Dkt. No. 32, at 10). However, Bilek's allegations fail to assert a connection between Federal as the principal and the telemarketer as the alleged agent, which is required to state a facially plausible claim for relief, or even a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In fact, the alleged claims against Federal cannot meet the plausibility standard, as Bilek's allegations do not even rise to the level of asserting a "sheer possibility" that Federal acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Bilek points to his allegations that Chubb contracted with HII to generate business and that HII contracted with "agents and lead generators" to effectuate that marketing. (Dkt. No. 32, at 11). But Bilek fails to assert a contractual or a supportable agency relationship between Federal and the alleged telemarketing agent. Instead, Bilek claims, without support or based on any personal knowledge, that Federal knew what was going on because Federal "knows that HII leads are generated through illegal telemarketing." (Dkt. No. 32, at 11). Even if the Court were to consider Bilek's improper conclusory statements, such statements do not assert a relationship

5

between Federal and the alleged telemarketing agent as is necessary to support Bilek's theory of actual agency. Bilek's allegations fail to meet the plausibility standard.

Bilek asserts that this case is similar to *Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817 (N.D. Ill. 2016). Bilek argues that the *Aranda* court found that a claim of actual authority was supported where "the consumer alleged that the principal had agreed to the use of subagents and provided the script to be used—thereby demonstrating 'control over the manner and means' of the marketing." (Dkt. No. 32, at p. 12). In this case, the Complaint's allegations provide no basis for the contention that Federal agreed to use unidentified subagents. Furthermore, Bilek's Complaint and Response Brief state numerous times that HII, not Federal, provided the script to be used. (*See* Dkt. No. 32, at pp. 10-12). Thus, the Complaint contradicts Bilek's current theory as to Federal, and Bilek cannot attribute allegations concerning HHI to Federal.

While the Complaint alleges a contractual relationship between Federal and HII and a separate relationship between HII and an alleged telemarketing agent, the pleading does not support an inference of an actual agency relationship between Federal and the alleged telemarketing agent. Bilek's concession that "the primary reason Plaintiff knows HII was involved is because of prior experience with HII's back-office workings and substantively identical calls" is telling. (Dkt. No. 32, at p. 13).

Here, Bilek's "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008). In evaluating Bilek's Complaint under a Rule 12(b)(6) standard, the Court does not accept the legal conclusions as true. *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

Accordingly, the Court should find that Bilek has failed to properly allege actual agency with respect to Federal.

### B. Bilek Does Not Allege that the Callers Acted With Federal's Apparent Authority.

Bilek's apparent authority argument should be rejected. Apparent authority exists only where the principal makes a "manifestation" to a third party, and the third party has a "reasonable" belief that an actor has the principal's authority to act. Restatement (Third) of Agency § 2.03 (emphasis added); *see also Smith v. State Farm Mutual Automobile Ins. Co.*, 30 F.Supp.3d 765, 777 (N.D. Ill. Aug 11, 2014); *In re Dish Network*, *LLC*, 28 F.C.C. Rcd. 6574, 6579 (2013) (defining apparent authority as "when the seller affirmatively, or through negligent inaction, makes it appear to third parties that the telemarketer has authority to act on the seller's behalf."). Here, Bilek fails to allege that Federal manifested anything *to him*. Bilek further fails to allege that the individuals who placed the alleged calls had authority to act on Federal's behalf. Thus, the Complaint fails to allege apparent authority.

As noted above, Bilek does not allege that he had *any contact at all* with Federal. He does not allege that Federal directly participated in the calls, or that he received a quote from anyone at Federal. Instead, on pages 15 and 16 of his Response Brief, Bilek tries to conflate Federal's alleged actions with HII's alleged actions. Federal addresses each in turn.[4]

- **Allegation:** Chubb and HII authorized the caller to issue quotes for Chubb insurance;
- **Response:** Even if Federal 'authorized' a caller to do something, this is not a manifestation *by Federal to Bilek* of anything;

---

[4] It is also worth noting that, in the section of Bilek's Response Brief addressing *apparent* authority, he lists the allegations from his Complaint that he believes created an outward impression to Bilek that there was "*actual authority* for the illegal robocalls." (Response Brief, Dkt. No. 32, p. 15). To the extent that Bilek's allegations go toward the elements of actual authority, and he conflates actual authority with apparent authority, his apparent authority argument fails.

7

- **Allegation:** Chubb contracted with HII to generate business, and HII, in turn, contracted with agents and lead generators to effectuate that marketing;
- **Response:** Such contractual arrangements do not constitute a manifestation to Bilek;

- **Allegation:** Chubb gave HII and its agents and lead generators authority to use its tradename;
- **Response:** Even if this were true, it is not a manifestation *by Federal to Bilek himself*. Since Bilek does not allege that Federal had any contact with HII's agents and lead generators, this is, at most, a manifestation that Federal made to HII;

- **Allegation:** HII approved telemarketing scripts that HII then provided to its lead generators for use in the calls;
- **Response:** This is something that HII allegedly did, not an act or omission by Federal;

- **Allegation:** Chubb provided proprietary pricing and product information for use in the lead generation telemarketing calls;
- **Response:** This is something Federal allegedly provided *to HII* or *to the telemarketers*, not to Bilek;

- **Allegation:** HII used Chubb's proprietary pricing information to pair the telemarketer with the quote for Chubb insurance through its on-line portal;
- **Response:** This is again something that HII – not Federal – allegedly did, and it cannot constitute a manifestation made by Federal to Bilek;

- **Allegation:** HII participated in the calls directly by e-mailing quotes using its own tradename while the call recipient was still on the line and provided real-time quoting information to the telemarketer;
- **Response:** This is yet again an alleged action of HII, not of Federal. This also does not involve any manifestation by anyone to Bilek;

- **Allegation:** HII permitted its lead generator to enter information into its system.
- **Response:** This is not an allegation involving Federal, and in any event, it does not involve any manifestation to Bilek by either Defendant;

- **Allegation:** Chubb thereafter followed through with sales based upon quotes issued via the telemarketing;
- **Response**: Bilek never alleges that he purchased insurance from Federal; and

- **Allegation:** Bilek relied upon the apparent authority created by Defendants' actions by answering the call, going through the sales pitch, and receiving quotes for Chubb insurance by name;

8

- **Response:** Yet again, there are no allegations that *Federal* made the call, made a sales pitch to Bilek, or gave a quote on the call. The allegation is that an alleged sub-agent, *not the principal*, made a representation to Bilek. A representation by the *agent* is not an element of apparent authority.

Because Bilek fails to allege any manifestations that Federal made to him, he fails to sufficiently plead apparent authority.[5]

Bilek relies upon *Vessal v. Alarm.com*, 2017 WL 4682736 (N.D. Ill. 2017), *Maeur v. American Intercontinental University, Inc.*, 2016 WL 4651395 (N.D. Ill. 2016), and *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014), in support of his apparent agency argument. This reliance is misplaced because *those cases did not discuss, analyze, or uphold any apparent authority theory* under the TCPA. In fact, the plaintiff in *Mauer* very specifically did not seek to establish liability via apparent authority. 2016 WL 461395, at *2, n.3 (denying motion to dismiss primarily based on fact that, unlike this case, immediately after call, plaintiff called same number back, provided e-mail address, and then received e-mail from principal within minutes). Moreover, the agent calling the *Charvat* plaintiff actually transferred the plaintiff's call to the alleged principal. *Id*. Such facts are not alleged here.

In fact, the present case is on all fours with *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (N.D. Ill. 2020), which Bilek fails to distinguish. In *Warciak*, the plaintiff received a text message from T-Mobile with an advertisement for a free sandwich from Subway, and the plaintiff sued only Subway. *Id.* at 356. The plaintiff alleged that there was a contract between T-Mobile and Subway, but the Court dismissed the plaintiff's TCPA claim, noting that

---

[5] Furthermore, Bilek's complaint does not allege the other element of apparent authority—that he reasonably believed that the individuals making the calls were Federal's agents when he received the calls. Rather, Bilek makes this allegation for the first time in a declaration attached to his response brief. As discussed above, attempting to introduce allegations for the first time in a response brief to a motion to dismiss is not permissible. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d at 1107.

9

statements by an agent are insufficient to create apparent authority, and holding that the complaint:

> lacks sufficient facts showing Subway manifested to the public that T-Mobile was its agent. Instead, [Plaintiff] relied on T-Mobile's conduct: that T-Mobile's statement led recipients to believe that the text came from Subway. However, statements by an agent are insufficient to create apparent authority without also tracing the statements to a principal's manifestation or control. [Plaintiff's] complaint further fails to allege sufficient facts to show how he reasonably relied, to his detriment, on any apparent authority with which he alleges Subway cloaked T-Mobile. The text message itself has numerous indications that T-Mobile maintained control over the content, timing, and recipients . . . . [Plaintiff's] allegations are not enough to create apparent authority by T-Mobile and Subway.

*Id.* at 357 (internal citations omitted).

In the present case, Bilek similarly alleges that a marketer not employed by Federal stated during a call that the insurance policy being offered was underwritten by Chubb. This is not enough to create apparent authority. The caller's alleged statement mentioning Chubb by name is no different than the texts from T-Mobile in *Warciak* mentioning Subway by name. If the text statements from the alleged agent in *Warciak*, where the plaintiff actually alleged a contract between the agent and the principal, were not enough to create apparent agency, then the caller's alleged statement here is not enough to create apparent authority either when Mr. Bilek does not allege any sort of contract between the callers and Federal.[6]

In a footnote, Bilek tries to cure his failure to allege that he was injured as a result of his reliance on any belief that the callers were Federal's agents. (Dkt. No. 32, p. 16, n.20). This effort fails. Bilek first argues that his and the class's "receipt of TCPA violations" (whatever they are), completion of an application for insurance, and payment to Federal collectively constitute "injury" as a result of his reliance. However, this theory is unsupported by the Complaint. Bilek

---

[6] Bilek does not even attempt to distinguish the apparent authority cases that Federal cited in its opening brief. (*See* Dkt. No. 23, p. 9).

10

does not allege that he ever purchased insurance because of the calls. Similarly, Bilek has no good faith basis to allege that Federal accepted applications from other customers, or that other people purchased insurance when he himself is not a class member who experienced "injury" by purchasing an insurance policy. Bilek also fails to explain how his alleged receipt of telemarketing calls is somehow the result of his detrimental reliance on his belief that the callers were Federal's agents. Bilek alleges that he answered the calls at issue here *without knowing who the caller was*.

Second, Bilek's citation to *Lushe v. Verengo Inc.*, 2015 500158 (C.D. Cal Feb. 2, 2015), is misplaced for two reasons. First, it is an unpublished decision that is not binding on this Court. Second, the *Lushe* case explains that California law distinguishes between the doctrine of ostensible authority and the Restatement of Agency's doctrine of apparent authority. In Illinois, by contrast, the terms "apparent" and "ostensible" authority are used interchangeably. *See In re Some Other Place, Inc.*, 1995 WL 230559, at *5 (Bankr. N.D. Ill. Apr. 13, 1995). Under applicable Illinois law and the doctrine of apparent authority, a principal can only be held vicariously liable in tort for injury caused by the negligent act of his apparent agent "*if the injury would have not occurred but for the injured party's justifiable reliance* on the apparent agency." *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213 (Ill. 1996) (emphasis added). Again, Bilek here had no injury, as he would have answered the call and had a so-called "receipt of TCPA violation[]" irrespective of any alleged reliance on his belief that the callers were agents of Federal.

Ultimately, Bilek has not alleged that he detrimentally relied on the callers' apparent authority as agents of Federal. *See Pantoja v. Vill. of Hoffman Estates*, No. 02 C 8124, 2005 WL 372193, at *7 (N.D. Ill. Feb. 15, 2005) (apparent agency requires that "an innocent third party

11

reasonably rel[y] on the apparent agency and [be] harmed as a result"). Bilek's own allegations show that he was not harmed because the call did not cause him to purchase health insurance. For these reasons, Bilek's allegations do not raise a plausible inference that the callers acted with Federal's apparent authority.

> **D.  Bilek Does Not Sufficiently Plead a Cause of Action for Vicarious Liability Under a Ratification Theory.**

As a preliminary matter, Bilek's failure to establish an agency relationship precludes any claim based on a ratification theory. *See* Restatement (Third) of Agency § 4.03 cmt. b. ("When an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is not a basis [for liability]"). For this reason alone, the theory should be dismissed.

But even if there were such an agency relationship, Bilek's ratification theory still fails.

> **1.  Bilek's Ratification Theory Fails Because Bilek Does Not Allege that he Purchased any Federal Products as a Result of the Alleged Telemarketing, or that Federal had Full knowledge of the Alleged Telemarking.**

Ratification requires that the principal retain a benefit and have full knowledge of all material facts at the time of ratification. *See* Restatement (Third) of Agency § 4.01 cmt. g.; *Sphere Drake Ins. Ltd. v. American General Life Ins. Co.*, 376 F.3d 664, 677-78 (7th Cir. 2004) ("Ratification requires that the principal have full knowledge of the facts and the choice to either accept or reject the benefit of the transaction") (internal quotations omitted). Here, Bilek fails to allege either element.

First, Bilek fails to allege that Federal received any benefit as a result of the alleged telemarketing calls. In fact, neither the Complaint nor Bilek's Response Brief contains *any* statement that he actually purchased health insurance as a result of the alleged telemarketing calls he received, or that he did any business whatsoever with Federal as a result of the alleged

12

calls. Bilek does assert, albeit in conclusory fashion, that Federal ratified the calls at issue by accepting the benefits of the marketing of its products from the alleged telemarketing calls, and that Federal had knowledge of these calls because it had been sued in the past for being involved in telemarketing schemes. (See Complaint, Dkt. No. 1, at ¶¶ 30-31). The need to dismiss Bilek's ratification theory is confirmed by *Toney v. Quality Resources, Inc.*, 75 F.Supp.3d 727, 745-46 (N.D. Ill. Dec. 1, 2014), where the court dismissed a TCPA claim premised on a ratification theory and commented that the plaintiff's ratification theory "fail[ed] because plaintiff does not allege that [defendants] accepted any benefit that stemmed from Quality's telemarketing calls to plaintiff. Indeed, plaintiff fails to allege that she did business with [defendants] as a result of Quality's calls."

In *Toney*, the plaintiff brought a putative TCPA class action against Quality Resources Inc. ("Quality"), a telemarketer, Stompeez.com, a website to purchase shoes, and Sempris, LLC ("Sempris"), a product manufacturer. *Id.* at 731. According to the plaintiff's complaint, she placed an order for slippers through Stompeez's website, and was asked to enter her phone number so that Stompeez could contact her if there was an issue with her order. *Id.* 731-32. The plaintiff contended that the latter representation was untrue because Stompeez was merely collecting customer information for Quality, which would then use the customer information to make telemarketing calls on behalf of Sempris. *Id.* at 732. The plaintiff's complaint did *not* allege that she bought any Sempris products as a result of Quality's telemarketing calls to her. Instead, she alleged that Quality entered into contracts with *other call recipients* on Sempris' behalf during more than 95 percent of the completed calls that were the subject of plaintiff's lawsuit. *Id.* at 732.

13

In these circumstances, the plaintiff in *Toney* argued that Sempris had ratified Quality's misconduct by knowingly accepting the benefit of tens of thousands of sales of its products to other customers, and that Sempris was aware of Quality's telemarketing practice because it had received complaints from other customers in the past. *Id.* at 745. Judge St. Eve swiftly dismissed plaintiff's ratification theory, ruling that plaintiff's conclusory allegations regarding the alleged benefits that Sempris received from telemarketing calls to other customers did not prove ratification, and that plaintiff's ratification allegations were insufficient because she failed to plead that she *herself* did any business with Sempris as a result of the telemarketing calls. *Id.* at 745.

Likewise, Bilek's conclusory allegations that Federal accepted the benefits of advertising done through telemarketing calls placed to *other* call recipients, and that Federal had knowledge of *those* calls because of past complaints regarding *other* telemarketing — are not sufficient to support a cause of action for vicarious liability under a ratification theory. Bilek fails to plead that he actually purchased any products or did any business with Federal as a result of the subject telemarketing calls.[7]

In *Toney*, the plaintiff only alleged that *other* call recipients in the class entered into contracts from the telemarketing calls, and this Court determined that the plaintiff's ratification allegations were insufficient because the plaintiff herself did not enter into a contract with the defendants. Here, not only did Bilek not purchase any insurance, he does not allege (and cannot

---

[7] *See also*, *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at *6, n.2 (N.D. Ill. Feb. 13, 2018) (rejecting plaintiff's ratification theory, stating "[n]otably, Plaintiff alleges that he had no interest in buying insurance products because he has free lifetime coverage through another source, so Defendants did not benefit by signing him up as a customer"); *Smith*, 30 F. Supp. 3d at 779 ("Plaintiffs' ratification theory against Farmers fails, however, because Plaintiffs do not allege that [the telemarketer] provided any leads to Farmers or its insurance agents stemming from [the telemarketer's] telemarketing calls to Plaintiffs. Indeed, none of the Plaintiffs allege that they spoke to or did business with Farmers or its insurance agents as a result of [the telemarketer's] calls.").

allege) any facts showing that any other class members spoke to Federal or entered into contracts with Federal as a result of the alleged telemarketing calls.

Second, Bilek does make any specific allegations suggesting that Federal had knowledge of all material facts surrounding the alleged calls made by the callers, nor does Bilek assert any facts to suggest that Federal knew that the callers and/or the other defendant in this case was allegedly using an automatic telephone dialing system in violation of the TCPA during the subject calls. Bilek's only allegation on this point is that Federal ratified the calls because it had knowledge of them as a result of being sued in the past for other telemarketing schemes. This does not suffice. Being sued for something in the past is not proof that the allegations in those other lawsuits were true. Bilek pleads no facts about what happened in those other lawsuits, does not claim that he was a part of those lawsuits, does not state whether there was any determination of liability as to Federal, and does not explain how the facts in those other lawsuits might relate to the facts in this lawsuit. Regardless, the *Toney* case again shows that such allegations cannot support ratification, as Judge St. Eve dismissed the *Toney* plaintiff's ratification theory based on her allegations that the principal "knew" about the calls at issue because it had received complaints in the past about telemarketing from other customers. That is no different than what Bilek alleges here.

### 2. The Case Law Cited in Bilek's Response Brief Does Not Support his Ratification Theory.

Bilek theory of ratification is also not supported by the case law cited in his response brief. (*See* Dkt. No. 32, pp. 21-22).

First, Bilek cites *Dolemba v. Illinois Farmers Ins. Co.* for the proposition that a mere allegation that a purported principal received *just marketing* from telemarketing calls is sufficient

15

to plead a theory of ratification. 213 F. Supp. 3d 988, 997 (N.D. Ill. Sept. 30, 2016). However, the *Dolemba* case does not even discuss ratification, and the plaintiff did not plead any ratification theory in that complaint. *Id*. Rather, the court in *Dolemba* explained that calls cannot be considered "telemarketing" unless the phone call includes an advertisement for a product. *Id.* at 994.

Second, *Mey v. Venture Data, LLC*, 2016 WL 11501595, at *5 (N.D.W. Va. July 26, 2016), is also inapposite. That case is completely silent as to whether 'benefit' can be established by alleging that a principal received *only marketing* from telemarketing calls. The *Mey* court's conclusion that a plaintiff only needs to allege some unnamed "benefit" is not consistent with this Court's precedent. *See, e.g.*, *Toney*, 75 F.Supp.3d at 745-46. Thus, *Dolemba* and *Mey* are not controlling.

Third, *Gould v. Farmers Ins. Exch.*, 288 F. Supp. 3d 963, 970 (E.D. Mo. 2018), is also not applicable here because the plaintiff in that case alleged that the defendant principal actually received premiums for sales resulting from the telemarketing calls. As discussed above, Bilek here does not allege that he purchased any products from Federal, or that Federal received any premiums from the alleged telemarketing.

Finally, Bilek erroneously cites *Saccameno v. Owen Loan Servicing*, 372 F. Supp. 3d 609, 635 (N.D. Ill. 2019) for the proposition that ratification "may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an unauthorized transaction." (Dkt. No. 32, at p. 22). Bilek fails to show how *Saccameno* applies here. The case involved a loan servicer's motion for judgment as a matter of law; it does not address what is required to sufficiently state a ratification theory at the pleading stage. *Id.* In *Saccameno*, the court found that a jury could determine whether or not the loan servicer had knowledge of its

employees' alleged misconduct because the plaintiff presented evidence showing that regulatory agencies had investigated the conduct of the defendant's employees and raised a host of concerns regarding its handling of distressed loans. *Id.* at 635-36. The court stated that a jury could also find that the loan servicer received benefits associated with not stopping its employees alleged misconduct, such as obtaining additional mortgage payments and additional fees and charges from the plaintiff. *Id.* at 635-37.

Here, there are no allegations in the Complaint that the alleged telemarketing was performed by employees of Federal, or that Federal received any payments, fees, or charges as a result of the alleged telemarketing. Therefore, even if *Saccameno* had addressed sufficient pleading of a ratification theory, and was not decided on a motion for judgment as a matter of law, the facts presented in that case are distinguishable and do not illustrate ratification here based on any alleged long-term acquiescence by Federal.[8]

### IV. Bilek Fails to State a Claim under the Illinois ATDA.

Bilek's ATDA claim fails for the same reasons that his TCPA claim fails. As discussed above, Bilek fails to adequately plead direct liability or vicarious liability through agency principles. In citing the *Bakov* case, 2016 WL 4146471 (N.D. Ill. Aug 4, 2016), Bilek misunderstands Federal's argument. Federal is not arguing that vicarious liability could never apply to the ATDA. Rather, Federal is arguing that Bilek's ATDA argument fails because he does not adequately plead vicarious liability as to Federal. Contrary to Bilek's summary of the *Bakov* case, the *Bakov* Court did not make a specific holding as to what is required to state an ATDA claim. Without any analysis, the *Bakov* Court denied the defendant's motion to dismiss

---

[8] As illustrated above in the discussion of the *Toney* case, Bilek's allegation that Federal was aware of the alleged telemarketing calls because it had been sued in the past for other telemarketing schemes is also not sufficient to support a cause of action for ratification based on long-term acquiescence. 75 F.Supp.3d 727 at 745-46

the ATDA count because it found that agency had been adequately pled for the purposes of the plaintiff's TCPA claim. Unlike *Bakov*, Bilek's allegations here are not enough to establish that the calls Bilek received were authorized *by Federal*. Accordingly, Bilek's ATDA claims against Federal must be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant Federal Insurance Company respectfully requests that this Honorable Court dismiss the claims asserted against it in the Complaint with prejudice.

Dated: June 19, 2020

Respectfully submitted,
**FEDERAL INSURANCE COMPANY**

By:  /s/ Arthur McColgan
     One of Its Attorneys

Edward P. Gibbons
Arthur J. McColgan
Jeremy D. Kerman
WALKER WILCOX MATOUSEK LLP
One North Franklin Street
Suite 3200
Chicago, IL 60606
Tel: 312-244-6700
Fax: 312-244-6800
egibbons@walkerwilcox.com
amccolgan@walkerwilcox.com
jkerman@walkerwilcox.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2020, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: June 18, 2020 /s/Arthur J. McColgan